**Michael ROBERTS, Appellant,**

v.

**The STATE of Texas, State.**

**No. 2–92–086–CR.**

Court of Appeals of Texas,
Fort Worth.

Feb. 10, 1993.

Rehearing Overruled April 20, 1993.

Richard Lee Griffin, Fort Worth, for appellant.

Tim Curry, Crim. Dist. Atty., Jane Ritter, Robert Mayfield, Kenneth Mullen, Asst. Dist. Attys., Fort Worth, for state.

Before HILL, C.J., and FARRIS and HICKS, JJ.

## OPINION

HICKS, Justice.

Michael Roberts appeals his conviction of attempted murder. The jury affirmatively found that Roberts "used or exhibited a deadly weapon during the commission of the offense or during immediate flight therefrom" and sentenced him to fifteen years imprisonment. We affirm.

In his sole point of error, Roberts contends the trial court's failure to submit a parole instruction as required by article 37.07, section 4(a) of the Texas Code of Criminal Procedure was reversible error. Roberts did not object at trial to the omitted instruction.

■ If the judgment contains an affirmative finding of a deadly weapon, a parole instruction must have been given in the jury charge. *See* TEX. CODE CRIM. PROC.ANN. art. 37.07, § 4(a) (Vernon Supp.1993); and *Grigsby v. State*, 833 S.W.2d 573, 576 (Tex.App.—Dallas 1992, pet. ref'd); *see also Madison v. State*, 825 S.W.2d 202, 205–07 (Tex.App.—Houston [1st Dist.] 1992, no pet.). Article 37.07 has recently been held to be constitutional, *Oakley v. State*, 830 S.W.2d 107, 110–11 (Tex.Crim.App.1992); it requires the court to inform the jury how good conduct time combines with actual time served to determine parol eligibility, and it instructs them not to consider how those laws would be applied to the defendant. *Grigsby*, 833 S.W.2d at 576; and *Madison*, 825 S.W.2d at 205–07.

The State concedes that because the judgment contains an affirmative finding of a deadly weapon, the trial court erred in omitting a parole instruction from the charge. We must now determine which harm analysis to apply.

Roberts contends that because "this error is parole law error, and is more properly classified as statutory error rather than as charge error," the harm should be assessed under Texas Rule of Appellate Procedure 81(b)(2)[1] (citing *Rose v. State*, 752 S.W.2d 529, 553 (Tex.Crim.App.1987) (opinion on reh'g)). The State contends that rule 81(b)(2) is inapplicable in this instance and that the harm test as enunciated in *Almanza v. State*, 686 S.W.2d 157, 171 (Tex.Crim.App.1984) (opinion on reh'g) should be applied.[2]

1. The applicable harm analysis as set forth in Texas Rule of Appellate Procedure 81(b)(2) is whether, beyond a reasonable doubt, the error made no contribution to the punishment.

2. *Almanza* provides the following standard for harm analysis: if timely objection was made to the error in the charge, reversal is required if the accused suffered some harm from the error; however, if no proper objection was made at trial, reversal is required only if the error is so egregious and created such harm as to deny the accused a fair and impartial trial. *Almanza*, 686 S.W.2d at 171.

Robert's reliance on *Rose* is misplaced. In *Rose*, the court declared that former article 37.07, section 4(a), and the parole instruction that it mandated, was unconstitutional. *Rose*, 752 S.W.2d at 552–53 n. 2. The court further found that a charge which included an unconstitutional parole instruction was to be considered a "statutory" error, and the harm test to be applied was rule 81(b)(2). *Id.* at 553–54. However, a constitutional amendment in November 1989 and the subsequent re-enactment of article 37.07, section 4 in 1989, removed the constitutional defects identified in *Rose*. *See Muhammad v. State*, 830 S.W.2d 953, 954–55 (Tex.Crim.App.1992); and *Oakley v. State*, 830 S.W.2d 107, 110 (Tex.Crim.App. 1992). Thus, *Rose* is inapplicable to cases tried after the effective date of the constitutional amendment which occurred on November 7, 1989. *Madison*, 825 S.W.2d at 207. In the instant case, the trial was in February 1992.

In arguing that *Almanza* should be applied in this case, the State relies on the following language in *Rose*: "Article 36.19, and thus *Almanza*, is invoked upon a violation of any of articles 36.14 through 36.18 V.A.C.C.P." *See Rose*, 752 S.W.2d at 553. Article 36.14 provides:

> Subject to the provisions of Article 36.07 in each felony case and in each misdemeanor case tried in a court of record, the judge shall, before the argument begins, deliver to the jury, ... *a written charge distinctly setting forth the law applicable to the case....*

TEX.CODE CRIM.PROC.ANN. art. 36.14 (Vernon Supp.1993) (emphasis added).

Article 37.07, section 4(a) provides:

> In the penalty phase of the trial of a felony case in which the punishment is to be assessed by the jury rather than the court, ... if the judgment contains an affirmative finding [of a deadly weapon], unless the defendant has been convicted of a capital felony *the court shall charge the jury in writing as follows:*
>
> *Under the law applicable in this case*, the defendant, if sentenced to a term of imprisonment, may earn time off the period of incarceration imposed through the award of good conduct time....

TEX.CODE CRIM.PROC.ANN. art. 37.07, § 4(a) (Vernon 1993) (emphasis added).

Thus, the State argues:

> The omitted parole instruction is, by its own terms, law applicable to this case. Under the plain meaning of the statute, article 36.14 is violated if the jury charge does not contain law applicable to the case. Because a requirement of article 36.14 was disregarded here, the error is [a] charging error as envisioned by article 36.19.

Although we do not disagree with this analysis, we believe the critical question is whether the error implicates constitutional rights.

In *Belyeu v. State*, 791 S.W.2d 66, 75 (Tex.Crim.App.1989), the court stated that "not all trial court error is subject to an analysis under R. 81(b)(2). Jury charge error is sometimes subject to a harm analysis under *Almanza* (citation omitted)." *Id.* The court further stated:

> Thus the threshold question to answer in deciding which harm analysis to utilize in a jury charge error situation, the analysis under *Almanza* or the analysis under 81(b)(2), is: Does the error implicate rights flowing from the United States Constitution?

*Belyeu*, 791 S.W.2d at 75.

Roberts does not contend the trial court deprived him of any constitutional rights when it failed to give the parole instruction. Thus, because constitutional error is not involved in this case, the *Almanza* standard applies. *See Grigsby*, 833 S.W.2d at 576 (citing *Belyeu*, 791 S.W.2d at 75).

Inasmuch as Roberts did not object at trial to the error in the court's charge, we must next decide whether the error was so egregious and created such harm that Roberts has not had a fair and impartial trial—in short, "egregious harm." *See Almanza*, 686 S.W.2d at 171; TEX.CODE CRIM.PROC.ANN. art. 36.19 (Vernon 1981).

In making this determination, "the actual degree of harm must be assayed in light of

the entire jury charge, the state of the evidence, including the contested issues and weight of probative evidence, the argument of counsel and any other relevant information revealed by the record of the trial as a whole." *Almanza*, 686 S.W.2d at 171. The purpose of this review is to illuminate the actual, not just theoretical, harm to the accused. *Id.* at 174.

Parole instructions were designed to increase jury sentences. *Grigsby*, 833 S.W.2d at 576. The instructions inform the jury how good conduct time combines with actual time served to determine parole eligibility. *Id.* The State, not the appellant, benefits from the instructions. *Id.* Thus, it is hard to see how not giving a charge meant to increase the length of a sentence harms Roberts.

In the instant case, the trial court instructed the jury as follows:

> In determining the punishment in this case, you are instructed that you are not to discuss among yourselves how long the Defendant will be required to serve any sentence of confinement you decide to impose. Such matters come within the exclusive jurisdiction of the Board of Pardons and Paroles and are of no concern to you.

This instruction discourages jurors from imposing greater sentences. Moreover, when determining whether the *giving* of a parole instruction harmed an appellant, courts have regarded similar instructions as curative and mitigating factors. *See Arnold v. State*, 786 S.W.2d 295, 311 (Tex. Crim.App.1990); *Rose*, 752 S.W.2d at 554; *Grigsby*, 833 S.W.2d at 576.

On November 14, 1990, Roberts entered a convenience store and walked straight to the counter. He asked the victim the price of snuff. The victim turned around to see the price, and when he turned back around, Roberts stabbed him in the chest with a knife. The victim pulled a gun, shot Roberts, and chased him into a nearby parking lot where Roberts ran out of sight. Roberts was apprehended when he arrived at the hospital for gunshot wounds.

Roberts testified that he did not know the victim, and he did not know why he stabbed him. The victim testified: he was thirty-three years old and the father of two preschoolers; he suffered a heart attack while he was in the hospital; and because of his injuries, he has breathing problems and cannot do many of the activities he was accustomed to prior to the offense.

Roberts had no prior convictions and requested probation. The State requested not less than fifteen years imprisonment. The jury, having the option of assessing punishment of two to twenty years or probation for ten years or less, sentenced Roberts to fifteen years. Roberts argues, "There is a reasonable doubt whether the jury, had it known that appellant would be required to serve one-fourth of his actual sentence, with no consideration of good conduct time, would have sentenced him to a term shorter than fifteen years."

However, the facts support Roberts' punishment. Moreover, Roberts has not shown that the error, if any, was so egregious and created such *actual* harm as to deny him a fair and impartial trial. Point of error number one is overruled.

The judgment is affirmed.