Robert Joseph FLUELLEN,
III, Appellant,

v.

The STATE of Texas, Appellee.

No. 06–01–00132–CR.

Court of Appeals of Texas,
Texarkana.

Submitted Feb. 19, 2003.
Decided March 25, 2003.

Richard H. Branson, League City, for appellant.

Joel H. Bennett, Asst. Dist. Atty., Michael J. Guarino, Criminal Dist. Atty., Galveston, for appellee.

Before MORRISS, C.J., ROSS and CARTER, JJ.

## OPINION

Opinion by Justice CARTER.

Robert Joseph Fluellen, III, appeals from his conviction by a jury for the of-fense of delivery of a controlled substance. The trial court assessed his punishment, with one enhancement, at fifteen years' imprisonment. Fluellen contends prosecutorial bias requires reversal, tape recordings were improperly admitted into evidence, the jury charge improperly included a portion of the *Geesa*[1] instruction on reasonable doubt, the indictment omitted necessary language about the "drug-free zone" allegation, and the portion of the statute including the "drug free zone" language is unconstitutional. Fluellen also contends that the State did not prove the enhancement was a final conviction and that the evidence is not legally and factually sufficient to support his conviction.

### 1. Factual Background

Fluellen was convicted by a jury of delivery of a controlled substance, less than one gram of cocaine, in a drug free zone. The indictment contained an enhancement paragraph alleging he had been previously convicted for the felony of delivery of a controlled substance.

At the original jury selection, Fluellen filed a *Batson*[2] motion; the trial court sustained the motion and quashed the jury panel. A jury was then selected from a second panel. That jury convicted Fluellen. Fluellen had elected for the trial court to assess punishment. The trial court found the enhancement paragraph true and sentenced Fluellen to fifteen years' incarceration.

The State presented evidence that Fluellen sold crack cocaine to an undercover officer at a location near the football stadium of Galveston Independent School District (G.I.S.D.).

**1.** *Geesa v. State,* 820 S.W.2d 154 (Tex.Crim. App.1991).

**2.** *Batson v. Kentucky,* 476 U.S. 79, 106 S.Ct. 1712, 90 L.Ed.2d 69 (1986).

The officer who testified he purchased the cocaine, Allen Bjerke, Jr., was assigned to work with the Galveston County Narcotics Task Force on October 7, 1999, to purchase narcotics from drug dealers. The evidence shows Bjerke was circling the block around the football stadium when he made the purchase. The officer identified Fluellen as the seller. An audiotape was introduced into evidence that contained a recording of the transaction. Bjerke was wearing a microphone that transmitted his conversation to another location, where it was recorded. Bjerke testified he was able to identify every voice as someone to whom he spoke during the making of the tape. Agent Anthony Hera was operating the tape recorder. The three voices on the tape were identified as Bjerke, Officer Joey Quiroga, and Fluellen.

Bjerke identified Fluellen wearing a Pittsburgh Steelers jersey with the number ten and dark pants. He also identified Fluellen in open court. Bjerke testified he gave Fluellen twenty dollars after Fluellen handed him two rocks of crack cocaine. The police task force identification team then approached Fluellen and documented his presence by surreptitiously photographing him. The identification team then provided Bjerke with a photograph they had taken of Fluellen, and Bjerke identified him as the person who made the sale.

In the process of authenticating the audiotape, the officers testified that, when they make a tape, it is initialed by the officer who made the recording and held in evidence. The tape here was turned over to supervisor agent Perry Larvin, who turned it over to the evidence technician, where it was stored in the Galveston County narcotics evidence locker. There is a click on the tape that Bjerke cannot explain.

Fluellen had had a previous encounter with the prosecuting attorney, Joe Maida. Fluellen testified that, as he was exiting a parking lot, Maida almost "hit my vehicle." They stopped, and obscenities were exchanged. Maida followed Fluellen, and the police arrived and asked Fluellen if he had a driver's license and insurance.

## 2. Sufficiency of Evidence

We first address the sufficiency of the evidence to support the conviction.

Fluellen contends the trial court erred by denying his motion for a directed verdict. This constitutes a challenge to the legal sufficiency of the evidence to support the conviction. *Throneberry v. State*, 72 S.W.3d 389, 392 (Tex.App.-Fort Worth 2002, pet. dism'd, untimely filed) (citing *Madden v. State*, 799 S.W.2d 683, 686 (Tex.Crim.App.1990)).

We first look to see if the evidence was legally sufficient to support the verdict. *Clewis v. State*, 922 S.W.2d 126, 133 (Tex.Crim.App.1996); *Hines v. State*, 978 S.W.2d 169, 172 (Tex.App.-Texarkana 1998, no pet.). The proper standard of review to determine legal sufficiency is whether the evidence would support the verdict when viewed in the light most favorable to the verdict. *Johnson v. State*, 23 S.W.3d 1, 7 (Tex.Crim.App.2000). In other words, if any reasonable trier of fact could have found beyond a reasonable doubt the essential elements of the crime, the verdict will be deemed legally sufficient. *Clewis*, 922 S.W.2d at 134.

The Texas Court of Criminal Appeals recently restated the standard of review for factual sufficiency:

Evidence can be factually insufficient in one of two ways: (1) the evidence is so weak as to be clearly wrong or manifestly unjust, or (2) the finding of a vital fact is so contrary to the great weight

and preponderance of the evidence as to be clearly wrong. *Johnson v. State,* 23 S.W.3d 1, 11 (Tex.Crim.App.2000). These standards encompass the complete civil appellate law formulation for factual insufficiency. *Ibid.*

Which standard applies generally depends on whether the complaining party had the burden of proof at trial. *Id.* at 9–10. If the complaining party did not have the burden of proof at trial, then the first or manifestly unjust standard applies. *Id.* at 10. If the complaining party on appeal had the burden of proof at trial, then the second or against the great weight and preponderance standard applies. *Ibid.*

We have, however, slightly modified this approach when a defendant challenges the factual sufficiency of a guilt finding. If the defendant challenges the factual sufficiency of the elements of the offense on appeal, even though the State has the burden of proof, the reviewing court must review the evidence using both standards. *Id.* at 11; *see also Goodman v. State,* 66 S.W.3d 283, 285 (Tex.Crim.App.2001). In other words, the reviewing court asks whether "a neutral review of all the evidence ... demonstrates that the proof of guilt is so obviously weak as to undermine confidence in the jury's determination, or the proof of guilt, although adequate if taken alone, is greatly outweighed by contrary proof." *Johnson,* 23 S.W.3d at 11.

*Zuliani v. State,* 97 S.W.3d 589, 593 (Tex. Crim.App. 2003).

Fluellen contends the evidence is legally insufficient because the stadium "was not obviously school property," and the State presented no documentary evidence to support its position that the stadium was owned by a school. He further contends because the evidence is insufficient to iden-tify him as the person who sold the cocaine.

## A. Drug–Free Zone

■ Delivery of less than one gram of cocaine is a state jail felony. TEX. HEALTH & SAFETY CODE ANN. § 481.112(b) (Vernon Supp.2003). If the crime occurs "in, on, or within 1,000 feet of any real property that is owned, rented, or leased to a school or school board" (defined by statute as a drug-free zone), the punishment range for delivering less than one gram of cocaine is enhanced to that of a third-degree felony. TEX. HEALTH & SAFETY CODE ANN. § 481.134(d) (Vernon Supp.2003).

Henry Boening, Superintendent of the G.I.S.D., testified G.I.S.D. owns Kermit Courville Stadium located on Galveston Island. According to Boening's testimony, the stadium is used by G.I.S.D. for various sporting events, including both varsity and subvarsity football games, as well as middle school track activities. Boening also testified the stadium was being used by the school during October of 1999. (The indictment alleged the offense occurred on October 7, 1999.) The trial court admitted, without objection, photographs of the stadium, dressing rooms located on the north side of the stadium, and the nearby parking lot owned by G.I.S.D.

Fluellen does not direct us to any evidence contradicting Boening's testimony that the stadium was owned by G.I.S.D. on October 7, 1999. We find that, viewing the evidence in the light most favorable to the verdict, a rational trier of fact could have found the crime occurred in, on, or within 1,000 feet of property owned, rented, or leased by G.I.S.D. Similarly, viewing the evidence in a neutral light, the evidence on whether the crime occurred at or within 1,000 feet of the stadium is neither so weak as to be clearly wrong or manifestly unjust, nor greatly outweighed by a preponderance of the evidence as to be clearly

wrong. *See Zuliani*, 97 S.W.3d 589, 593. The State is not required to admit into evidence deeds or maps showing the stadium was school property. The State may rely "on any other evidence or testimony to establish any element of an offense for which punishment is increased under Section 481.134." TEX. HEALTH & SAFETY CODE ANN. § 481.135 (Vernon Supp.2003). Accordingly, we find the evidence factually and legally sufficient to support the drug-free zone enhancement.

### B. Identification of Fluellen as the Person Who Delivered the Cocaine

■ Fluellen also contends the evidence is insufficient to identify him as the person who sold cocaine to the officer. Officer Bjerke identified Fluellen both in the courtroom and immediately after Bjerke bought the drugs as the person who sold him the crack cocaine. During the drug sale, Fluellen and Bjerke were as close as six to twelve inches away from each other; Bjerke had ample opportunity to see Fluellen's face and appearance. That is legally sufficient evidence to support the verdict.

In addition, Bjerke identified the other voice on the tape of the transaction as that of Fluellen. As the State played the audiotape for the jury, Bjerke testified as follows:

A. I once again as I reflected on the tape pulled up and asked him [Fluellen]. And that's whenever *he [Fluellen] once again told me to make the block.* He was waiting for his little friend to come out of the alley.

. . . .

Q. [What happens after you circle the block for the sixth time and return to the corner where Fluellen is standing?]

A. I *pulled my vehicle up.* Mr. Fluellen approached my vehicle from the passenger's side of the vehicle. At that point we conversed about the deal. I was, of course, going to request to see the narcotics before I handed over the money. He wanted to see the money before he handed over the narcotics.

(Emphasis added.) Reading this testimony, in conjunction with listening to the audiotape of the drug transaction, it is clear from Bjerke's testimony that he identified the other voice on the tape as that of Fluellen. On the audiotape, Bjerke described the other speaker as a black male wearing a Pittsburgh Steelers football jersey, a black baseball cap, and black tennis shoes, who told Bjerke to "make the block." Bjerke testified before the jury that Fluellen was wearing a number 10 Pittsburgh Steelers football jersey and dark pants when he sold Bjerke crack cocaine.

The State also notes that Fluellen's aunt, Helen Solzano, testified she saw Fluellen wearing a number 10 Pittsburgh Steelers jersey on the night in question. She further admitted that, while she did not believe Fluellen was the person on the audiotape of the drug transaction, she also could not exclude him as the possible speaker.

Viewing this evidence in the light most favorable to the jury's verdict, we find that a rational trier of fact could find each element of the crime beyond a reasonable doubt. Bjerke testified a black male wearing a Pittsburgh Steelers jersey sold him two rocks of crack cocaine on October 7, 1999. The audiotape clearly evidences a drug transaction, and Bjerke identified Fluellen as the person who sold him the drugs. In addition, Bjerke made an in-court identification of Fluellen as the person who sold him two rocks of crack cocaine.

There is also evidence contradicting the identification. Fluellen's mother emphati-

cally denied that the other voice on the audiotape belonged to Fluellen, and Fluellen's sister could not identify the seller's voice on the audiotape as belonging to Fluellen.

However, reviewing all the evidence in a neutral light, we find that the evidence identifying Fluellen as the person who sold the crack cocaine is not so weak as to be clearly wrong or manifestly unjust, nor is the finding that he was the person who sold the drugs so contrary to the great weight and preponderance of the evidence as to be clearly wrong. *See Zuliani*, 97 S.W.3d 589, 593. Therefore, the evidence is factually sufficient to support the conviction. The contentions of error are overruled.

### 3. Prosecutor Recusal

 Fluellen also contends he was denied due process of law when the trial court denied his motion to recuse the prosecutor. As mentioned above, the prosecutor and Fluellen had a previous encounter at which time words were exchanged. A trial court may not disqualify a district attorney or his staff on the basis of a conflict of interest that does not rise to the level of a due process violation. *State ex rel. Hill v. Pirtle*, 887 S.W.2d 921, 927 (Tex.Crim.App.1994); *State ex rel. Eidson v. Edwards*, 793 S.W.2d 1, 6 (Tex.Crim. App.1990). There are instances when a prosecutor must recuse himself from the prosecution of an individual. If there is a conflict of interest on the part of the district attorney or his assistants, however, the responsibility of recusal lies with them—not the trial court. *Edwards*, 793 S.W.2d at 6. If the prosecution's failure to recuse itself violated Fluellen's due process rights, such conviction would violate the Fourteenth Amendment to the United States Constitution. *Id.*

The only evidence cited by Fluellen to support his position that the prosecutor manifested prejudice or vindictiveness at trial was the fact that a *Batson* challenge was sustained in the first jury selection. Fluellen argues that, "[t]he potential for bias and misconduct by the prosecutor was simply too great for the court to allow the prosecutor to continue on the case...." The court has no authority to remove the prosecutor for any lesser reason than a violation of due process. There is no showing of a due process violation. At most, there is only the showing of a potential for such a violation. Likewise, there is no evidence of any conduct of the prosecutor that rises to the level of a due process violation requiring his disqualification. The contention of error is overruled.

### 4. Admission of Tape Recording

 Fluellen next contends the trial court erred by admitting an audiotape recording of the transaction into evidence in the absence of adequate authentication. We use an abuse of discretion standard when reviewing the trial court's decision to admit evidence. *Torres v. State*, 71 S.W.3d 758, 760 (Tex.Crim.App.2002); *Burden v. State*, 55 S.W.3d 608, 615 (Tex. Crim.App.2001). An appellate court will not reverse a trial court's ruling unless that ruling falls outside the zone of reasonable disagreement. *Torres*, 71 S.W.3d at 760; *Burden*, 55 S.W.3d at 615. The trial court does not abuse its discretion in admitting evidence where it believes that a reasonable juror could find the evidence has been authenticated or identified. *Schneider v. State*, 951 S.W.2d 856, 863 (Tex.App.-Texarkana 1997, pet. ref'd); *Pena v. State*, 864 S.W.2d 147, 152 (Tex. App.-Waco 1993, no pet.) (op. on reh'g); *Coleman v. State*, 833 S.W.2d 286, 289 (Tex.App.-Houston [14th Dist.] 1992, pet. ref'd).

Fluellen contends the audiotape was inadmissible under Rule 901 because the officer who operated the tape recorder did not testify and there was no evidence to show his competence to operate the machine or that it was operating properly when the recording was made.[3]

Bjerke had the microphone but did not operate the recording device. Fluellen argues there is no testimony about whether the other agent was qualified to operate the recording device and its capability and reliability. Bjerke testified he could identify every voice of every person to whom he spoke during the making of the tape. He also testified the tape accurately depicts what took place that evening.

The Texas Court of Criminal Appeals in *Angleton v. State*, 971 S.W.2d 65 (Tex.Crim.App.1998), determined that Rule 901 of the Texas Rules of Evidence controls admissibility of tapes and overruled previous cases suggesting additional requirements.[4] Here, the officer testified he was present when the tape was made; in fact, he was wearing the wire, he identified all voices on the tape, and he further stated the tape accurately depicted what took place that evening. In this case, one of the participants in the conversation testified that he had listened to the tape and that it accurately recorded the conversation. Where a participant can testify that the final product accurately portrays the interview, then it may be inferred that the operator was competent. *Falcetta v. State*, 991 S.W.2d 295, 298–99 (Tex.App.-

Texarkana 1999, pet. ref'd). Fluellen's contention regarding the authentication of the tape is without merit.

Fluellen next contends the tape was improperly admitted because the State did not establish an adequate chain of custody. Before the Rules of Evidence were adopted, the strength of the chain of custody went to the weight of the evidence rather than to its admissibility. *DeLeon v. State*, 505 S.W.2d 288, 289 (Tex.Crim.App. 1974). The Rules of Evidence do not specifically address the chain of custody issue. As previously stated, the ultimate test for authentication or identification as a condition precedent to admissibility is satisfied by evidence sufficient to support a finding that the matter in question is what its proponent claims. *Reavis v. State*, 84 S.W.3d 716, 719 (Tex.App.-Fort Worth 2002, no pet.) (proof surveillance videotape placed in recorder and record button pressed, along with evidence tape was of observed behavior is adequate); *Murray v. State*, 864 S.W.2d 111 (Tex.App.-Texarkana 1993, pet. ref'd); *see* Tex.R. Evid. 901(a).

The evidence in this case shows that, after Bjerke initialed the tape, he turned it over to Agent Larvin. Bjerke did not know what procedure had been followed in storing this particular tape for later use at trial, but did testify about the standard procedures used to preserve evidence. He also testified it was an accurate rendition of the conversation, and there is no evidence to suggest that the tape was

---

**3.** Tex.R. Evid. 901 states:

(a) ... The requirement of authentication or identification as a condition precedent to admissibility is satisfied by evidence sufficient to support a finding that the matter in question is what its proponent claims.

(b) ... examples of authentication or identification conforming with the requirements of this rule:

. . . .

(5) *Voice identification.* Identification of a voice, whether heard firsthand or through mechanical or electronic transmission or recording, by opinion based upon hearing the voice at anytime under circumstances connecting it with the alleged speaker.

**4.** *See Kephart v. State*, 875 S.W.2d 319 (Tex. Crim.App.1994).

tampered with or that it did not contain an accurate rendition of the conversation between Bjerke and Fluellen. Breaks in the chain of custody go to the weight rather than the admissibility of evidence. *Schneider*, 951 S.W.2d at 863.

Fluellen has not shown that the State tampered with the tape, much less to the extent the tape no longer fairly and accurately depicted the conversations between Bjerke and Fluellen. As long as a trial court believes that a reasonable juror could find the evidence has been authenticated or identified, the trial court should admit the evidence. *Coleman*, 833 S.W.2d at 289; *see Jackson v. State*, 968 S.W.2d 495 (Tex.App.-Texarkana 1998, pet. ref'd); *Jordan–Maier v. State*, 792 S.W.2d 188 (Tex.App.-Houston [1st Dist.] 1990, pet. ref'd) (holding when evidence is object or document with unique or distinctive characteristics, testimony of a person who perceived the item suffices to identify the evidence in court).

Error has not been shown. The contention is overruled.

### 5. Jury Charge—Partial *Geesa* Instruction

Fluellen next contends the trial court erred by including language from the former *"Geesa"* instruction.[5] The Texas Court of Criminal Appeals has overruled the portion of *Geesa* requiring the trial court to define reasonable doubt for the jury. *Paulson v. State*, 28 S.W.3d 570, 573 (Tex.Crim.App.2000). In *Paulson*, the court found that the better practice was to give the jury no definition or explanation of the term.

The complained-of portion of the charge reads as follows:

It is not required that the prosecution prove guilt beyond all possible doubt. It

is required that the prosecutor's proof exclude all "reasonable doubt" concerning the Defendant's guilt.

Counsel did not object to the inclusion of this term in the jury charge. When the alleged charge error has not been objected to, reversal is required only if error exists and if it has caused harm so egregious the defendant has not had a fair and impartial trial. If we determine it was error to give this charge, we then determine whether egregious harm has been shown. To do so, we must examine the entire jury charge, the state of the evidence, including contested issues and the weight of probative evidence, the argument of counsel, and any other relevant information revealed by the record of the trial as a whole. *Almanza v. State*, 686 S.W.2d 157, 171 (Tex.Crim.App.1984) (op. on reh'g). The purpose of this review is to illuminate the actual, not just theoretical, harm to the accused. *Id.* at 174; *Roberts v. State*, 849 S.W.2d 407, 410 (Tex.App.-Fort Worth 1993, pet. ref'd).

As we recognized in *In re C.S.*, 79 S.W.3d 619 (Tex.App.-Texarkana 2002, no pet.), the majority in *Paulson*, 28 S.W.3d 570, rejected the reasonable doubt definition for several reasons. The majority in *Paulson* concluded the definition was repetitious, logically infirm, and if followed literally, would cause a jury to never convict anyone.

The Waco Court of Appeals has reviewed a charge which provided exactly the same two sentences from the *Geesa* instruction. *Phillips v. State*, 72 S.W.3d 719, 721 (Tex.App.-Waco 2002, no pet. h.). The Waco court concluded *Paulson* required either all of the instruction be given (by agreement of counsel) or nothing be given. However, we find nothing in *Paul-*

---

5. *Geesa*, 820 S.W.2d at 154.

*son* to suggest that giving a correct statement of the law that happened to be contained within the *Geesa* instruction would necessarily be error and decline to take the all-or-nothing position espoused in *Phillips*.

The Houston First Court of Appeals has taken this position in *Carriere v. State*, 84 S.W.3d 753, 759 (Tex.App.-Houston [1st Dist.] 2002, pet. filed). In that case, exactly the same language was given in the charge. The Houston court acknowledged the Waco decision, but disagreed with its analysis.

> According to *Paulson*, when the court is evaluating a jury charge for a reasonable-doubt-definition error, we must first determine if a definition of reasonable doubt exists in the jury charge. *Paulson*, 28 S.W.3d at 573. If not, the charge does not violate *Paulson*. In our case, the trial court instructed the jury "it is not required that the prosecution prove guilt beyond all doubt." This instruction does not lessen the State's burden of proof, especially in light of the second sentence which correctly repeats the State's burden that, "it is required that the prosecution's proof excludes all reasonable doubt concerning the defendant's guilt." The charge was proper because it did not define reasonable doubt—it merely instructed the jury that appellant's guilt must be proved beyond a reasonable doubt, not beyond all possible doubt.

*Id.* The court then concluded this is simply not the sort of instruction prohibited by *Paulson*. Because there was no error, then no harm analysis was conducted.

There is a split among the appellate courts that have addressed this issue on the question of whether use of this language in the charge is error. Cases holding it is not error to include a portion of the *Geesa* definition of reasonable doubt in the jury charge are *Minor v. State*, 91 S.W.3d 824 (Tex.App.-Fort Worth 2002, pet. filed); *Brown v. State*, 91 S.W.3d 353 (Tex.App.-Eastland 2002, no pet.); *Carriere*, 84 S.W.3d at 759.

In *Rodriguez v. State*, 96 S.W.3d 398, 403–405 (Tex.App.-Austin 2002, pet. ref'd), although concluding initially that the language was not too intrusive on the jury's application of the reasonable doubt standard, the Austin court then concluded it was error to give a portion of the charge over objection. The court conducted an *Almanza* analysis and concluded the error was harmless.

As discussed above, holding the trial court erred by giving the exact instruction given in this case: *Phillips*, 72 S.W.3d at 721.

In *Dooley v. State*, 65 S.W.3d 840, 843–44 (Tex.App.-Dallas 2002, pet. ref'd), the Dallas court found that the use of a complete *Geesa* instruction when defense counsel did not object to its inclusion did not render a jury verdict erroneous as a matter of law. *See also In re C.S.*, 79 S.W.3d at 622 (finding error in giving complete *Geesa* instruction, but was harmless based on *Paulson* court's conclusion instruction actually favored defendant rather than State).

Having reviewed these cases, we agree with the analysis used by the Houston First Court of Appeals in the *Carriere* case and conclude error has not been shown.

Even if error exists, however, this is a correct, nonconfusing statement of the law which does not alter the burden of proof or allow the State to obtain a conviction based on a lesser standard than "reasonable doubt," and as required by *Paulson*, it does not improperly define that term for the jury. Under these circumstances, after a thorough evaluation of the record

applying the less stringent standard, we cannot say the charge error caused harm. *See Ovalle v. State,* 13 S.W.3d 774, 786 (Tex.Crim.App.2000) (factors to consider).

The contention of error is overruled.

### 6. Motion to Quash Indictment

 Fluellen next contends the trial court erred by overruling his motions to quash the indictment. Fluellen contends the indictment was inadequate because it alleged he sold drugs within 1,000 feet of a "premises" owned by a "school" rather than within 1,000 feet of "real property" owned by a "school district."[6] The statute provides that an offense is committed if it occurs within 1,000 feet of real property owned by a school. That is the language used in the indictment. Fluellen also contends that, because the indictment (as amended) only specifies that property as "a stadium," it is inadequate to provide him with notice.

As the State points out, Fluellen's argument concerning the "premises" rather than "real property" language has been waived because that argument was never brought to the attention of the trial court. *See* Tex.R.App. P. 33.1.[7]

The second question is whether the allegation that the property was owned by a "school" rather than a "school district" was preserved. The statute enhances the of-

fense when committed within 1,000 feet of real property owned by a school. The indictment alleged the property was owned by a school district. This is a distinction without a difference. The terms used by the Legislature as descriptive of property owned by a school clearly include property owned by the school district rather than by the individual campuses. Indeed, as the State suggests, with the exception of private schools which might be individual entities, school property is typically owned not by individual campuses, but by the school district of which those campuses are a part.[8] There is no notice problem in this regard, and we conclude that, by alleging and proving ownership of the property by a school district, the intent of the statute is implemented.

Fluellen also mentions his objection that the indictment was inadequate because it described the school property as "a stadium" but did not specify the stadium involved. There is no clear contention of error, argument, or discussion on this matter, and it is not properly before this Court for review.

Fluellen finally complains the indictment should have been quashed because it did not plead a mental state regarding his impingement on the "drug-free zone." The motions to quash do not raise this matter. It was therefore not preserved for review. *See* Tex.R.App. P. 33.1. Even

---

**6.** *See* Tex. Health & Safety Code Ann. § 481.134(d)(1) (Vernon Supp.2003).

**7.** The argument under this point is that the term "premises" is used in a different statute and that the State simply used the wrong statutory definition. Section 484.134(a)(4), however, defines "premises" as meaning "real property and all buildings and appurtenances pertaining to the real property." That would seem to dispose of the matter if it were necessary to reach it. Tex. Health & Safety Code Ann. § 484.134(a)(4) (Vernon Supp. 2003).

**8.** *See generally Love v. City of Dallas,* 120 Tex. 351, 40 S.W.2d 20, 29 (1931); *Bell v. Katy Indep. Sch. Dist.,* 994 S.W.2d 862, 863 (Tex. App.-Houston [1st Dist.] 1999, no pet.); *Save Our Springs Alliance, Inc. v. Austin Indep. Sch. Dist.,* 973 S.W.2d 378 (Tex.App.-Austin 1998, no pet.); *West Orange–Cove Consol. Indep. Sch. Dist. v. Smith,* 928 S.W.2d 773, 774 (Tex.App.-Beaumont 1996, no writ) (holding that rights associated with property acquired by school districts and cities protected by same constitutional guaranties that shield property of individuals).

if it were, however, there is no authority suggesting that a separate *mens rea* must be proven in this context. The *mens rea* is connected with the wrongful act. The fact that it took place in a "drug-free zone" enhances the punishment. There is nothing that suggests that the intent stretches beyond the criminal offense and that there must also be a separate intent to commit the act in a particular place. *See generally Uribe v. State,* 573 S.W.2d 819, 821 (Tex.Crim.App. [Panel Op.] 1978) (no necessity to allege separate culpable mental state to raise penalty for offense of carrying handgun on premises where alcohol was sold).

### 7. Jury Charge—"Drug–Free Zone" Allegation

■ Fluellen next contends the instructions on reasonable doubt involving the "drug-free zone" were confusing and lowered the State's burden of proof. In his argument, Fluellen posits that the charge was structured so that the jury could only fail to find him guilty if it had a reasonable doubt the delivery was in a "drug-free zone" and that it otherwise presumed his guilt.

Again, counsel did not object to this alleged charge error; thus, if error exists, we reverse only on a showing of egregious harm. *Almanza,* 686 S.W.2d at 171. The complained-of language follows:

> Now if you find from the evidence beyond a reasonable doubt that on or about the 7th day of October, 1999, in Galveston County, Texas, ROBERT JOSEPH FLUELLEN, did then and there intentionally or knowingly deliver, by actual transfer, to Allen Bjerke, a controlled substance, . . . and it is further presented in and to said Court that the Defendant committed the above offense within 1,000 feet of premises owned by the Galveston, Texas, Independent

School District, to-wit: a Stadium, then you will find the Defendant, ROBERT JOSEPH FLUELLEN, guilty of Delivery of a Controlled Substance, to-wit: cocaine in a drug free zone, as alleged in the indictment.

> Unless you so find from the evidence, or if you have a reasonable doubt that the Defendant delivered a controlled substance within 1,000 feet of a premises owned by Galveston, Texas, Independent School District, to-wit: a Stadium, you will find the Defendant "not guilty."

Fluellen takes the position that the converse second paragraph required the jury to find him guilty unless the State failed to prove the delivery within the drug-free zone. This is not an accurate reading of the charge. It is a fairly typical converse charge, which submits essential elements of the offense with instruction to acquit if the jury does not find the element to be true or has a reasonable doubt about it.

The charge does not improperly change a burden of proof, nor does it presume Fluellen's guilt for delivery. No error has been shown.

### 8. Punishment Evidence

■ Fluellen also contends the trial court erred by allowing the State to introduce a tape recording of an extraneous offense at the punishment stage of the trial. At trial, counsel objected to the admission of the tape because the underlying indictment for the extraneous offense had been dismissed and because the proper predicate had not been laid. Although the court initially sustained the generic "predicate" objection, it did so erroneously. An objection to the admission of evidence must be reasonably specific so as to apprise the trial court of its legal basis. A mere objection based on improper predicate requires trial counsel to inform the trial court exactly how the predicate is

deficient. *Mutz v. State*, 862 S.W.2d 24, 30 (Tex.App.-Beaumont 1993, pet. ref'd); *Waldon v. City of Longview*, 855 S.W.2d 875, 878 (Tex.App.-Tyler 1993, no writ); *Jones v. State*, 825 S.W.2d 470, 472 (Tex. App.-Corpus Christi 1991, pet. ref'd); *Cartwright v. State*, 807 S.W.2d 654, 656 (Tex.App.-Beaumont 1991), *aff'd*, 833 S.W.2d 134 (Tex.Crim.App.1992).

The State requested a more specific objection specifying which element of the predicate the State had failed to meet. The trial court found the question appropriate and asked defense counsel to explain. Counsel responded as follows:

> They haven't tied it to any crime. In other words, if the tape was able to be introduced, it has to be tied to a particular offense, and that would be any kind of introduction of a drug or some simulated substance, your Honor. It hadn't been shown. It has not been done.

This objection does not comport with the argument made before this Court. Fluellen's present contention is the tape should not have been admitted because it was not "properly identified, preserved or authenticated." The argument now being raised was not presented to the trial court for review, and the contention was therefore not preserved for appellate review. TEX. R.APP. P. 33.1.

### 9. Constitutionality of TEX. HEALTH & SAFETY CODE ANN. § 481.134

 Fluellen next contends TEX. HEALTH & SAFETY CODE ANN. § 481.134 (Vernon Supp.2003) is unconstitutional on its face. There are two types of challenges to the constitutionality of a statute: the statute is unconstitutional as applied to the defendant, or the statute is unconstitutional on its face. A constitutionality challenge based on application to the defendant's case cannot be raised for the first time on appeal. *Briggs v. State*, 789 S.W.2d 918, 923 (Tex.Crim.App.1990); *Smith v. State*, 10 S.W.3d 48, 49 (Tex.App.- Texarkana 1999, no pet.). However, a defendant may wait until his appeal to contend, for the first time, that a statute is void on its face. A facial challenge to the constitutionality of a statute is difficult to mount successfully because the challenger must establish that no set of circumstances exists under which the statute is valid. *Santikos v. State*, 836 S.W.2d 631, 633 (Tex.Crim.App.1992). To prevail on such a claim, the challenger must show that in its operation the statute is unconstitutional as applied in the situation. *Id.* The mere fact the statute may be unconstitutional as applied to others is not sufficient. *Id.; see also Cantu v. State*, 939 S.W.2d 627, 639 (Tex.Crim.App.1997); *Parent v. State*, 621 S.W.2d 796, 797 (Tex.Crim.App.1981); *Perez v. State*, 938 S.W.2d 761, 764 (Tex. App.-Austin 1997, pet. ref'd). The distinction between the two types of challenges turns on the issue of the trial court's jurisdiction: if a statute is facially unconstitutional, the trial court lacks all jurisdiction; if a statute is unconstitutional in its individual application, the trial court has plenary jurisdiction, but the accused may have to affirmatively assert a defense of unconstitutional application. *See Casares v. State*, 768 S.W.2d 298, 299 (Tex.Crim. App.1989).

Fluellen contends the statute is unconstitutional because: (1) it is vague and overly broad, (2) it is internally inconsistent, (3) it is "totally arbitrary in its application to persons committing identical offenses," (4) the statute lacks a culpable mental state with respect to the person's awareness that the premises is a drug-free zone, and (5) unlike other criminal statutes (such as carrying a weapon in a liquor store), Article 481.134 does not require the State to post signs in all drug-free zones warning drug dealers that the punishment

ranges for their crimes will be raised by selling illegal drugs on school property.

Fluellen's brief states, "Appellant's case presents this Honorable Court with the opportunity to fully and carefully review the 'Drug Free Zone' law *and how it was applied to appellant in this particular case."* (Emphasis added.) Fluellen is clearly arguing the statute is unconstitutional as applied to him; he is not claiming the statute is unconstitutional on its face. This issue was not preserved at trial. We therefore overrule this contention of error. *See* TEX.R.APP. P. 33.1; *Smith,* 10 S.W.3d at 49.

## 10. Finality and Validity of Enhancement Conviction

 Fluellen also contends the State failed to prove that his prior conviction was final for the purpose of enhancement. The State alleged Fluellen had previously been convicted of delivering cocaine in cause number 92CR0173 in Galveston County. On the *nunc pro tunc* judgment entered into evidence, there is a notation listing "notice of appeal," with a blank space to its right and a date listed to the left. Fluellen contends this notation indicates Fluellen appealed that judgment, thereby requiring the State to show the conviction was affirmed on appeal. The State contends that the "notice of appeal" notation, because it is followed by an uncompleted blank, means Fluellen did not appeal the 1992 conviction. The date listed to the left, according to the State, is the date Fluellen's thumbprint was taken on the final judgment.

 "After the State establishes that a defendant has been previously convicted, this Court will presume that a conviction is final when faced with a silent record regarding such." *Johnson v. State,* 784 S.W.2d 413, 414 (Tex.Crim.App.1990); *see also Jones v. State,* 77 S.W.3d 819, 822 (Tex.Crim.App.2002).

[W]hen the State offers into evidence a certified copy of a judgment and sentence, it has made a prima facie case that the conviction reflected within that judgment and sentence is a final conviction worthy of respect. That evidence is legally and factually sufficient to prove that a prior conviction is a final conviction absent any evidence to the contrary. If the judgment of conviction has been set aside, vacated or appealed, the defendant must offer some evidence to support that fact. Once the defendant offers that evidence, the State must prove, beyond a reasonable doubt, that the conviction has been affirmed and the mandate has issued.

*Jones,* 77 S.W.3d at 822–23.

The State made a prima facie case that Fluellen had previously been convicted by offering evidence of the prior judgment and connecting the judgment to Fluellen through expert fingerprint testimony. The burden then shifted to Fluellen to offer "some evidence" the conviction had been appealed. No such evidence was offered in this case. Neither the clerk's record nor the reporter's record of this case shows Fluellen offered into evidence a written notice of appeal, an appellate docketing statement, an opinion from a court of appeals reversing his conviction, or other such evidence. It is not enough to argue Fluellen *might* have appealed the conviction; he must affirmatively present evidence of such an appeal. *See id.* at 823–24. As such, Fluellen failed to meet his burden of proof. The State was entitled to have the jury presume Fluellen had been convicted based on the State's prima facie case.

Nonetheless, the State concedes the judgment in 92CR0173 (used for enhancement) might be void. On October 16, 1992,

Fluellen pled guilty to the first-degree felony of delivery of a controlled substance (cocaine). The trial court sentenced Fluellen to ten years' imprisonment, with instructions that Fluellen be assigned to the Special Alternative to Incarceration Program (SAIP) (boot camp). Texas Department of Criminal Justice Institutional Division received Fluellen on November 6, 1992, determined he was not a suitable candidate for SAIP, and returned him to the trial court. The trial court then changed Fluellen's sentence to five years' imprisonment on December 18, 1992, and entered a *nunc pro tunc* judgment on December 21, 1992, to indicate this change of sentence.

■ The statute providing for the release of an inmate from the SAIP envisions a very narrow time period when the trial court may modify the sentence imposed.

> After the expiration of 75 days but prior to the expiration of 90 days from the date on which the convicted person is received into custody by the institutional division, the judge of the court that imposed the sentence may suspend further execution of the sentence imposed and place the person on community supervision under the terms and conditions of this article, if in the opinion of the judge the person would not benefit from further imprisonment.

TEX.CODE CRIM. PROC. ANN. art. 42.12, § 8(a) (Vernon Supp.2003). A trial court that acts outside the fifteen-day window is without jurisdiction to do so, and the attempted resentencing is void. *Ex parte Bittikoffer*, 802 S.W.2d 701, 702 (Tex.Crim. App.1991) (en banc).

■ According to a notation on the December 21, 1992, judgment, the trial court originally assessed a ten-year sentence on October 16, 1992, in the case used for enhancement. Less than seventy-five days later, the trial court attempted to reduce Fluellen's sentence to five years—but it had not yet acquired jurisdiction to effect such a change. *See* TEX.CODE CRIM. PROC. ANN. art. 42.12, § 8. Where a court acts but lacks jurisdiction, any judicial action is void. *See Garza v. Tex. Alcoholic Beverage Comm'n*, 89 S.W.3d 1, 13–14 (Tex.2002) (court's actions, done after court lost jurisdiction, were void).

The Corpus Christi Court of Appeals reviewed a similar situation a few years ago. In *Garza v. State*, 904 S.W.2d 877 (Tex.App.-Corpus Christi 1995), *aff'd*, 931 S.W.2d 560 (Tex.Crim.App.1996) (en banc), a defendant was sentenced to ten years' imprisonment for aggravated sexual assault. The trial court purportedly granted a motion for new trial, but failed to enter a written order within the seventy-five-day statutorily required time frame. *Id.*, 904 S.W.2d at 878; *see also* TEX.R.APP. P. 21.8 (formerly TEX.R.APP. P. 31(e)). The trial court nonetheless held a new trial, after which the jury sentenced the defendant to forty years' incarceration. On appeal, the defendant claimed the trial court's order granting a new trial was void for want of jurisdiction. The court of appeals agreed with the defendant, reversed the second conviction, and held the first conviction and sentence were final. *Garza*, 904 S.W.2d at 879.[9]

In the case at bar, the trial court acted without jurisdiction on December 21, 1992, when it tried to reduce Fluellen's original sentence from ten years to five. That

9. The Corpus Christi court also held that a notation on a docket sheet that a new trial was granted was insufficient; the court of appeals held that a trial court must, under the rules, enter a written order separate from its docket entry, and must do so within seventy-five days of the judgment, to effect a new trial.

decision by the trial court is, therefore, void. Additionally, following the reasoning of the Corpus Christi Court of Appeals' decision in *Garza*, we find the first judgment was apparently lawfully entered while the trial court did possess jurisdiction and could have served as a final conviction for the purpose of future enhancement under Article 12.42 of the Texas Penal Code. *See* TEX. PEN.CODE ANN. art. 12.42 (Vernon 2003).

However, the enhancement paragraph in the indictment alleged Fluellen's conviction became final on December 21, 1992. It appears the proper date of conviction was October 16, 1992. Generally, the State must prove its enhancement case as alleged in the charging instrument. *Williams v. State*, 980 S.W.2d 222, 226 (Tex.App.-Houston [14th Dist.] 1998, pet. ref'd). "However, it is well settled that the State need not allege enhancement counts in an indictment with the same degree of specificity that the primary offense requires." *Jingles v. State*, 752 S.W.2d 126, 129 (Tex.App.-Houston [14th Dist.] 1987, pet. ref'd) (citing *Freda v. State*, 704 S.W.2d 41, 42 (Tex.Crim.App. 1986)). "The test is whether the accused has been misled to his prejudice." *Jingles*, 752 S.W.2d at 129 (citing *Freda*, 704 S.W.2d at 42).

In the case at bar, Fluellen entered a plea of "not true" to the enhancement allegation. The enhancement paragraph alleged Fluellen was convicted "on the 21st day of December, A.D., 1992, in cause number 92CR0173, in the 56th Judicial District Court of Galveston County, Texas ... of the felony offense of Delivery of a controlled substance, to wit: Cocaine,...." The State introduced the December 21, 1992, judgment, which on its face stated

the defendant was originally sentenced on October 16, 1992, in cause number 92CR0173 in the 56th Judicial District Court of Galveston County, Texas, for the offense of delivery of cocaine.

The State, in its brief, asks us to affirm the trial court's sentence by relying on the first judgment of conviction dated October 16, 1992, as evidence of Fluellen's prior conviction. That judgment, however, was not offered into evidence at trial and is not in the record on appeal. Because the December judgment was void and because the State failed to introduce the October judgment into evidence, the evidence is insufficient to support the trial court's finding that Fluellen had been previously convicted in either December or October 1992, of delivery of cocaine. Accordingly, the trial court was not authorized to assess punishment within the range provided for a second-degree felony. We reverse the trial court's sentence and remand for a new trial on punishment.

We affirm Fluellen's conviction, but reverse the judgment as to the punishment and remand the case to the trial court for a new trial on punishment.

ROSS, J., concurs

Concurring Opinion by Justice ROSS.

The majority aligns itself with those sister courts holding it is not error to give part of the *Geesa*[10] instruction on reasonable doubt in the absence of an agreement. I agree with the Waco Court of Appeals that the directive in *Paulson*[11] was clear: "give it all [the *Geesa* instruction] if the parties agree or give none of it." *Phillips v. State*, 72 S.W.3d 719, 721 (Tex.App.-Waco 2002, no pet.). A standard instruction to the jury in all criminal cases is that

---

**10.** *Geesa v. State*, 820 S.W.2d 154 (Tex.Crim. App.1991).

**11.** *Paulson v. State*, 28 S.W.3d 570 (Tex.Crim. App.2000).

"no person may be convicted of an offense unless each element of the offense is proved beyond a reasonable doubt." TEX. CODE CRIM. PROC. ANN. art. 38.03 (Vernon Supp.2003). *Paulson* quoted with approval an earlier Texas Court of Criminal Appeals decision that the language of this statute needs no amplification. *Paulson v. State,* 28 S.W.3d 570, 571 (Tex.Crim.App. 2000). Having given the statutory instruction on reasonable doubt in the instant case, the additional selected *Geesa* instruction was an unwarranted amplification.

For these reasons, I would hold it was error for the trial court to give the selected *Geesa* instruction. However, considering the entire jury charge and the state of the evidence, I do not feel Fluellen suffered egregious harm from this error. I therefore concur in the result.