In The


Court of Appeals


Sixth Appellate District of Texas at Texarkana



______________________________



No. 06-06-00049-CR


______________________________




JAMES CLEARNON INGRAM, Appellant



V.



THE STATE OF TEXAS, Appellee




 


On Appeal from the 123rd Judicial District Court


Panola County, Texas


Trial Court No. 2003-C-182




 




Before Morriss, C.J., Carter and Moseley, JJ.


Opinion by Justice Carter



O P I N I O N



 James Clearnon Ingram was convicted by a jury for selling a controlled substance at a
location within 1,000 feet of a playground. Two enhancement convictions were also alleged. Ingram
chose to have the trial court assess his punishment--which it set at forty-five years' imprisonment. 
The evidence shows that Ingram sold six rocks of crack cocaine (less than one gram) to an
undercover officer. The question raised is whether the evidence also shows the sale occurred in a
drug-free zone. 

 On appeal, Ingram contends the evidence is insufficient to prove that the transaction occurred
within 1,000 feet of a playground or that the facility was open to the public; that two jurors were
improperly seated; and that the State inadequately proved the chain of custody of the controlled
substance.

 The charge presented to the jury at the guilt/innocence phase merged the offense, which was
delivery of a substance in penalty group 1 in an amount which would have made the offense a state-
jail felony, (1) with a separate section which raises the punishment levels for a delivery made in a drug-free zone. (2) No complaint was made that the punishment issue was submitted with the
guilt/innocence portion of the charge. 


I. SUFFICIENCY OF THE EVIDENCE 

 Under the statute, the offense is punishable as a state-jail felony under Section 481.112(b)
of the Texas Health and Safety Code. Tex. Health & Safety Code Ann. § 481.112(b). However,
if it is shown at the punishment phase of the trial that the offense was committed within 1,000 feet
of a playground, it is punishable as a third-degree felony. (3) 

 In relevant part, the Code defines a playground as any outdoor facility that:

 (A) is intended for recreation;

 (B) is open to the public; and 

 (C) contains three or more separate apparatus intended for the recreation of
children, such as slides, swing sets, and teeterboards.


Tex. Health & Safety Code Ann. § 481.134(a)(3). (4)

 A. The Evidence

 The undercover officer, who made the buy, Chad Taylor, testified Ingram sold him the drugs
near a playground owned by the Turner Alumni Association and that it was 560 to 580 feet from the
site of the buy. Taylor testified there was a baseball field, equipment consisting of a merry-go-round,
swings, a couple of sets of slides, and some climbing toys at the playground site. Deputy Sheriff
David Jeter testified that the transaction took place 552 feet from the recreational area with a margin
of error of ten to twenty feet, based on his measurements, and that there was a baseball field there
with five or six pieces of playground equipment. 

 In a factual sufficiency review, we view all the evidence in a neutral light and determine
whether the evidence supporting the verdict is so weak that the jury's verdict is clearly wrong and
manifestly unjust or whether the great weight and preponderance of the evidence is contrary to the
verdict. Johnson v. State, 23 S.W.3d 1, 7 (Tex. Crim. App. 2000); see Watson v. State, No. PD-469-05, 2006 Tex. Crim. App. LEXIS 2040 (Tex. Crim. App. Oct. 18, 2006); Clewis v. State, 922
S.W.2d 126, 134 (Tex. Crim. App. 1996). In reviewing the legal sufficiency of the evidence, we
view the relevant evidence in the light most favorable to the verdict and determine whether any
rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. 
Johnson, 23 S.W.3d at 7.

 B. The Arguments

 Ingram specifically complains the evidence is insufficient because there is no evidence the
outdoor recreational facility was within 1,000 feet of the transaction. He also contends the evidence
does not show the outdoor recreational facility was open to the public--and thus was not proven to
be a location defined as a "playground" by the statute. As set out above, to enhance the punishment,
the State must prove the offense was committed within 1,000 feet of an outdoor facility used for
recreation and which is open to the public. The State's reply, essentially, is that, because it was a
children's playground in a residential area, and because there was no evidence it was fenced or
enclosed, it was a reasonable inference it was open to the public. We note that city-owned public
playgrounds are often fenced, but are in fact open for public use, and do not agree that fencing or the
lack thereof would be dispositive. Regardless of the importance of such evidence, in this case there
is no evidence concerning fencing of this facility. 

 C. Does the Evidence Prove That This Is a Drug-Free Zone?

 There is clearly factually and legally sufficient evidence to support a conclusion that the area
was an outdoor recreational facility and that the sale occurred within 1,000 feet of the facility. It is
equally apparent the facility was part of a now-closed school and is currently operated and owned
by the Turner Alumni Association. The question remains as to whether there is evidence the facility
was open to the public. 

 There is no direct evidence the facility was open to the public. The question is actually
whether the jury could reasonably infer from the evidence before it the facility was public in nature. 
The ownership of the park by an alumni association, generally a private organization, does not assist
in the determination that the park is open to the public. The fact that a baseball field was on the
property adds little, as there is likewise no proof that it is open to use by the public. The fact the
property was located near a residential area and contained playground equipment shows no more
than that some children may use the facility--not that the public at large had access or permission
to use the property. It is not uncommon for a group of homeowners in a neighborhood to provide
a playground and limit its use to the children living in the neighborhood. 

 This record contains nothing else that supports the conclusion the outdoor recreational facility
was open to the public. The statute contains no presumption in that regard, and we cannot assume
from the evidence provided, or from any reasonable inferences raised from that evidence, that the
facility was one that was open to the public.

 Accordingly, we must conclude there was no evidence to support the enhancement of
punishment of the state-jail felony under Section 481.134(b) to a third-degree felony. Because the
court assessed punishment, there is nothing explicitly setting out the range of punishment utilized
in the sentencing process. 

 The State alleged Ingram had been previously convicted of two prior felony offenses. The
court assessed punishment at forty-five years' confinement, so it is evident the court considered the
two prior felonies to enhance the punishment by virtue of Section 12.42 of the Texas Penal Code. 
See Tex. Penal Code Ann. § 12.42 (Vernon Supp. 2006). However, Section 12.42 limits state-jail
felonies from its reach for habitual felony convictions. The specific language is that, if "it is shown
on the trial of a felony offense other than a state jail felony punishable under Section 12.35(a) that
the defendant has been finally convicted of two felony offenses . . . .," the twenty-five to ninety-nine
years or life range of punishment is to be utilized. Tex. Penal Code Ann. § 12.42(d). However,
if the state-jail felony is punishable under Section 12.35(a) and the defendant has previously been
convicted of two felonies, sequentially, then punishment is for a second-degree felony. Tex. Penal
Code Ann. § 12.42(a)(2). If the evidence had shown this offense was committed in a drug-free
zone (in this case, within 1,000 yards of a playground, as defined), punishment would not be
controlled by Section 12.35(a) of the Texas Penal Code, but by Section 481.134(b) of the Texas
Health and Safety Code. However, since there was no evidence the offense was committed within
1,000 yards of a playground as defined by the statute, Section 481.134(b) does not control the
punishment range and punishment is governed by the general rule for state-jail felonies--Section
12.35(a) of the Texas Penal Code. Hence, the offense is a state-jail felony governed by Section
12.35(a), and the maximum punishment for such an enhanced state-jail felony is twenty years'
confinement. Tex. Penal Code Ann. § 12.42(a)(2). Consequently, we must reverse for a new
punishment hearing to allow the punishment to be set within the range allowed by law. (5) 

 Because there was no evidence that would support a finding that the location at issue was a
playground, the "drug-free zone" allegation was not proven and the conviction remains nothing more
than a state-jail felony (6)--and the punishment assessed is clearly outside any range possible for a
state-jail felony conviction, even had the punishment been properly enhanced. Accordingly, we must
reverse for a new punishment hearing.

II. BATSON ISSUE

 We now turn to Ingram's other contentions of error about the trial. He also contends the trial
court used an improper procedure in remedying the State's exercise of peremptory strikes in the
context of the racial composition of the jury. The trial court sustained a Batson (7) motion and seated
two of three excluded African-American jurors. Ingram did not object to this procedure and did not
object to the two particular jurors being added to the panel. It thus appears Ingram received the relief
he sought and did not further complain about the trial court's action. The error presently claimed has
not been preserved for appellate review. See Tex. R. App. P. 33.1. The contention is overruled. (8) 

III. NECESSITY OF CHAIN OF CUSTODY FOR CONTRABAND

 Ingram next contends the trial court erred by admitting evidence about the controlled
substance without providing adequate proof of the chain of custody. He contends in a brief argument
that because the State did not provide a "chain of custody" affidavit as allowed by Article 38.42 of
the Texas Code of Criminal Procedure, the contraband was inadmissible. Tex. Code Crim. Proc.
Ann. art. 38.42 (Vernon 2005). The affidavit provides a way to authenticate evidence without the
necessity of live testimony--but does not limit the right to introduce admissible evidence relevant
to the chain of custody. Tex. Code Crim. Proc. Ann. art. 38.42, § 2.

 No objection was made to the trial court concerning the introduction of the contraband.
Therefore, nothing is preserved for appellate review. See Tex. R. App. P. 33.1(a). 

 Even if the issue had been preserved, no error is presented. The State provided a proper
chain of custody for the contraband. The testimony showed that Ingram delivered the drugs to
Officer Taylor, that Taylor placed them in a plastic bag, took them to his office in Henderson, and
delivered them to David Salazar, who secured them in an evidence locker. Later, Charles Garrett,
a Department of Public Safety (D.P.S.) officer, took the drugs from the locker to the crime laboratory
in Tyler, where they were kept in a secure vault. The supervising forensic scientist at the D.P.S.
laboratory retrieved them from the vault and delivered them to court in a sealed envelope. 

 Even before the Texas Rules of Evidence were adopted, the chain of custody went to the
weight rather than to the admissibility of the evidence. DeLeon v. State, 505 S.W.2d 288, 289 (Tex.
Crim. App. 1974). The Texas Rules of Evidence do not specifically address the chain of custody
issue--they simply provide that the authentication or identification necessary as a condition
precedent to admissibility is satisfied by evidence sufficient to support a finding that the matter in
question is what its proponent claims. Fluellen v. State, 104 S.W.3d 152, 162 (Tex.
App.--Texarkana 2003, no pet.); see Tex. R. Evid. 901(a).

 Ingram has suggested no way in which the proof was inadequate to support such a
finding--instead, the entire argument focuses on the lack of a "chain of custody" affidavit. The
affidavit is not required. Error has not been shown. The contention of error is overruled. (9)







 Accordingly, we affirm the trial court's judgment as to the conviction, but reverse the trial
court's judgment as to punishment. We remand the case to the trial court for a new punishment
hearing in accordance with this opinion.


 Jack Carter

 Justice


Date Submitted: November 22, 2006

Date Decided: January 9, 2007


Publish
1. See Tex. Health & Safety Code Ann. § 481.112(b) (Vernon 2003).
2. See Tex. Health & Safety Code Ann. § 481.134(a)(3), (b)(1) (Vernon Supp. 2006).
3. The statute does provide other options for proving an offense was committed within a drug-free zone: a premises "owned, rented, or leased by an institution of higher learning, the premises of
a  public  or  private  youth  center,  or  a  playground;  .  .  .  ."  Tex.  Health  &  Safety  Code
Ann. § 481.134(b)(1). Here, the State alleged only that the facility was a playground, and that
allegation was followed in the guilt/innocence jury charge.
4. The jury was not given an instruction defining the term "playground," but there was no
objection to the charge. We must judge the sufficiency of the evidence measured by the elements
of the offense as defined by the hypothetically-correct jury charge for the case. See Malik v. State,
953 S.W.2d 234, 240 (Tex. Crim. App. 1997). 
5. We note the trial court never pronounced a finding on the enhancement allegations. Since
another trial on punishment is required, such omission is inconsequential to the holding in the case. 
However, we recognize authority holding that, while it is better practice for the trial court to make
an oral pronouncement regarding its findings on punishment enhancement allegations, a trial court
does not err when it overlooks making that pronouncement, especially when the issue of sentencing
is submitted to the trial court rather than a jury, as we stated in Newby v. State, 169 S.W.3d 413, 416
(Tex. App.--Texarkana 2005, no pet.) (citing Garner v. State, 858 S.W.2d 656, 659 (Tex.
App.--Fort Worth 1993, pet. ref'd)). However, a closer reading of Garner also shows the trial court
made a finding of true in the judgment, and the Fort Worth court found that sufficient. In this case,
we have neither oral nor written findings of true, and the judgment has the notation "N/A" regarding
a finding on enhancement even though the offense is shown as "1st Degree Felony Enhanced." 
6. The conviction, not the punishment, determines enhancement. See Fite v. State, 60 S.W.3d
314, 320 (Tex. App.--Houston [14th Dist.] 2001, pet. ref'd); Arriola v. State, 49 S.W.3d 374 (Tex.
App.--Fort Worth 2000, pet. ref'd); Hadnot v. State, 851 S.W.2d 378, 379 (Tex. App.--Houston [1st
Dist.] 1993, pet. ref'd).
7. Batson v. Kentucky, 476 U.S. 79 (1986).
8. Ingram's counsel has also, in two unsupported sentences in her brief, stated that Ingram's
right to a speedy trial was violated. There is no argument, no citation to the record or authority
provided to support that statement. The issue has not been adequately presented for our review. A
contention that is conclusory and cites no authority presents nothing for review. Garcia v. State, 887
S.W.2d 862, 871 (Tex. Crim. App. 1994). We find this point of error to be inadequately briefed and
decline to address it. See Tex. R. App. P. 38.1(h); Vuong v. State, 830 S.W.2d 929, 940 (Tex. Crim.
App. 1992).
9. In the final sentence of the brief, complaint is made that failure to object to the introduction
of the evidence denied Ingram a fair trial. If this was intended to raise an issue on ineffective
assistance of counsel, we find this passing reference, which was not raised by any point on appeal
and lacks any citation or analysis, to be inadequately briefed and we decline to address it.