Affirmed and Memorandum Opinion filed July 10, 2003









Affirmed and Memorandum Opinion filed July 10, 2003.

 

In The

 

Fourteenth Court of Appeals

____________

 

NO. 14-02-01104-CR

____________

 

THOMAS
MARVIN KAIO, Appellant

 

V.

 

THE
STATE OF TEXAS, Appellee

 



 

On Appeal from the
174th District Court

Harris County, Texas

Trial Court Cause
No. 925,602

 



 

MEMORANDUM  OPINION

Appellant, Thomas Marvin
Kaio, was convicted by a jury of aggravated robbery, sentenced to twenty-five
years’ confinement in the Institutional Division of the Texas Department of
Criminal Justice, and assessed a $10,000 fine. 
In two issues, appellant challenges the legal and factual sufficiency of
the evidence supporting his conviction. 
We affirm.  








                                                             I. 
Background

Around
9:00 p.m., on November 18, 2001, Homero Juan and Donaldo Cruz drove up to the
Star Food and Grocery located at the intersection of Suburban and West Mount
Houston.  Appellant and another man named
“Charlie,” whom Juan had seen at the store on previous occasions, were standing
outside the store.  Juan, who was
driving, remained in the car while Cruz went into the store.  Appellant got into the passenger side of the
car, pointed a pistol at Juan, and ordered him to get out.  When Juan did not get out of the car,
appellant started hitting him with the pistol. 
When Cruz came out of the store, he saw someone in the car hitting
Juan.  When Cruz tried to separate
appellant from Juan, the other man knocked him to the ground, pulled Juan out
of the car, got in the driver’s seat, and sped out of the parking lot, with
appellant sitting in the passenger seat. 

Harris County Deputy
Donald Meade was waiting at a traffic light at the intersection of Suburban and
Mount Houston when he observed a car driving at a high rate of speed “fish-tail”
out of the parking lot of a convenience store. 
Meade immediately activated his lights and siren and attempted to
initiate a traffic stop.  Instead of
stopping, the car accelerated, and Meade notified the dispatcher that the
driver of the car was evading arrest. 
Meade pursued the car, which reached speeds of 75 miles per hour in a
residential area with a posted limit of 35 miles per hour.








When Meade observed the
car slow down and the brake lights going on and off, Meade notified the
dispatcher that its occupants were going to bail out of the car.  Reaching a dead-end at a bayou, appellant and
Charlie jumped out before the car stopped, and ran toward the bayou and a
heavily wooded area.  Meade attempted to
follow the suspects, but lost sight of them and notified the dispatcher.  A canine unit tracked the suspects through
the woods and located appellant.  When
appellant started kicking the dog, it started biting his leg.  Appellant was told to stop fighting the dog
and to show his hands.  Appellant refused
and, instead, started kicking the dog again. 
After the dog started biting his other leg, appellant complied.  Appellant was arrested and Emergency Medical
Services treated him for dog bites. 
Although a second canine unit was deployed to search for the second
suspect, he was never found.  After
appellant’s apprehension, Juan identified him as the assailant who had
repeatedly struck him with the pistol.  

After receiving consent
to search Juan’s car, Meade recovered a pistol from between the driver’s seat
and the passenger’s seat.  There was not
a clip in the gun.  Later, Juan found the
clip to a .380 caliber gun underneath the seat of his car, but threw it
away.  

During his testimony at
trial, appellant recounted a different version of what transpired at the
convenience store.  Appellant testified
that he saw Juan pull up and Cruz get out of the car.  According to appellant, he went up to Juan’s
car after Juan spoke to him.  Juan
indicated for appellant to get in the car. 
Appellant showed Juan some drugs and Juan “put up three fingers like he
said he wanted three rocks or whatever.” Appellant’s “associate,” Charlie said
Juan owed him money, pulled a gun on Juan, and started hitting him with the
gun.  Juan started fighting Charlie.  Cruz then came out of the store and ran
behind Charlie, who hit Cruz twice in the face. 
Charlie pulled Juan out of the car, and jumped in and drove off.  Appellant told Charlie to let him out because
he had previously been at the Texas Youth Commission, was currently on
community supervision, and was carrying drugs. 
Appellant denied hitting Juan or owning a gun.

                   II.  Legal and Factual
Sufficiency of the Evidence

In his first issue,
appellant challenges the legal sufficiency of the evidence supporting his
conviction.  When reviewing the legal
sufficiency of the evidence, we must view the evidence in the light most
favorable to the verdict and determine whether any rational trier of fact could
have found the essential elements of the offense beyond a reasonable
doubt.  Jackson v. Virginia, 443
U.S. 307, 319 (1979); Wilson v. State, 7 S.W.3d 136, 141 (Tex. Crim.
App. 1999).  In conducting this review,
we do not engage in a second evaluation of the weight and credibility of the
evidence, but only ensure that the jury reached a rational decision.  Muniz v. State, 851 S.W.2d 238, 246
(Tex. Crim. App. 1993).  








A person commits
aggravated robbery if, while in the course of committing theft, “and with the
intent to obtain or maintain control of the property, he . . . intentionally or
knowingly threatens or places another in fear of imminent bodily injury or
death” and “uses or exhibits a deadly weapon.” 
Tex. Pen. Code Ann. '' 29.02(a)(2), 29.03(a)(2)
(Vernon 2003).  Appellant complains that
Juan=s identification of him
was insufficient and there was no evidence linking him to the pistol used in
the commission of the offense.  

Appellant complains that the only evidence
linking him to the offense was a tentative identification by the victim that
was elicited by the prosecutor only after a great deal of prompting.  With regard to his in-court identification of
appellant, Juan testified:

Q.  And what happened C what
happened?  When you pulled up at the
store, what happened?

A.  I just got to the store and then the two of
them were there.  The two of them were in
the store.

Q.  The two of who?

A.  Him and another.

Q.  Ask him to identify him by an article of
clothing.

A.  I don=t remember
anymore.

Q.  No. 
The type of clothing he=s wearing today.

A.  Yes.

Q.  What color?

A.  Right now?

Q.  Right.

A.  The shirt he has on is one I’m looking at.

MR. DOYLE
(Prosecutor):  Judge, may the record
reflect that the witness has identified the defendant?

MR. FREED (Defense
counsel):  Your Honor, the record does not
so reflect.

THE COURT:  Continue your questions, Mr. Doyle.

Q.  (By Mr. Doyle)  Could you ask C  








THE COURT:  No. 
Mr. Doyle, you ask him questions like you ask him questions and let him
translate and we’ll get through this.

Q.  (By Mr. Doyle)  Will you please describe the color of the
shirt he=s wearing right now.

A.  It=s green, isn’t it?

MR. DOYLE:  May the record reflect that the witness has
identified the defendant?

THE COURT: 
The record will so reflect.

It is evident from the record that any
problems with the in-court identification of appellant were the result of the
inarticulate manner in which the prosecutor initially posed his questions
through the translator.  In any event,
Juan subsequently testified that appellant held a gun to his head and beat him
with the gun:

Q.  And the person who was pointing the gun at
your head and hit you in the head with the pistol, is he in this courtroom
today?

A.  That one (indicating).

Q.  The person who pointed this pistol?

A.  Oh, yes.

Q.  Is he in the courtroom today?

A.  Yes.

Q.  Where is he?

A.  That one (indicating).

                                                                   *        *       
*

A.  [The police] took me over there where the car
was.

Q.  Was the defendant in one of the police cars?

A.  Yes.

Q.  And did he identify the defendant as a person
who was in the police car?

INTERPRETER:  I=m sorry?

THE
DEFENDANT:  Yes.

Q.  (By Mr. Doyle)  Okay. 
So, you identified the person in the back of the police car as the
person who pointed the pistol at you?








A.  Yes.

Q.  And are you sure that this is the person who
pointed the pistol at you and took your car?

A.  Yes.

The positive
identification of the defendant as the person who committed the crime is
sufficient to support the conviction.  Jones
v. State, 500 S.W.2d 661, 666 (Tex. Crim. App. 1973); Moore v. State,
446 S.W.2d 877, 878 (Tex. Crim. App. 1969); Fluellen v. State, 104
S.W.3d 152, 160 (Tex. App.CTexarkana
2003, no pet.).  

Appellant further
complains that although Juan identified him as the assailant who held a gun to
his head and beat him, he also testified that he is afraid of black men
generally.  Appellant then continues to
state that the only black man Juan saw, after seeing the two black men at the
store when he first arrived, was appellant when the police first had him in
custody, and later in the courtroom. 
Appellant, therefore, concludes that Juan had no choice but to identify
him as his assailant because he knew that the man who attacked him was
black.  

Our review of the record
reveals that according to Juan’s testimony on cross-examination, he was afraid
as he was sitting in the car because the two men, appellant and Charlie, were
there.  Juan did not state he was afraid
of them because they were black or otherwise mention their race.  Appellant’s counsel raised the issue of race
when he then questioned Juan about whether many blacks live in the part of
Mexico where he lived, whether the “the sight of two black men standing outside
the convenience store made [him] afraid,” and why Juan “stop[ped] at the store if [he was] afraid by seeing two black
men standing there.”  Juan did not
testify that “he is afraid of black men generally,” as appellant asserts.  Moreover, there is no evidence to suggest
Juan positively identified appellant because of any racial animus.  








Appellant further
complains that the State did not present any evidence linking him to the
gun.  Appellant argues that although
three latent prints were recovered from the gun, none of those prints matched
his prints.  Appellant, however,
misconstrues the testimony regarding prints found on the gun.  Deputy Katherine Mills, an evidence
technician with the Sheriff’s Department, testified that although she found
three latent prints, she Adetermined
that there were not enough characteristics within the latent prints to make a
comparison to make them usable.”  Deputy
Mills explained, however, that this meant she could not prove to whom the
prints belonged, not that appellant did not handle the pistol.  

Juan=s positive identification
of appellant as his assailant is sufficient to support his conviction and
defeat his legal sufficiency challenge.  See
Jones, 500 S.W.2d at 666; Moore, 446 S.W.2d at 878; Fluellen,
104 S.W.3d at 160.  Thus, we find the
evidence was sufficient for a rational trier of fact to have found beyond a
reasonable doubt that appellant is guilty of aggravated robbery.  Appellant’s first issue is overruled.

In his second issue,
appellant challenges the factual sufficiency of the evidence supporting his
conviction.  When reviewing claims of
factual insufficiency, it is our duty to examine the jury’s weighing of the
evidence.  Clewis v. State, 922
S.W.2d 126, 133, 134 (Tex. Crim. App. 1996). 
There are two ways in which evidence can be factually insufficient: (1)
the evidence is so weak as to be clearly wrong or manifestly unjust, or (2) the
finding of a vital fact is so contrary to the great weight and preponderance of
the evidence as to be clearly wrong.  Zuliani
v. State, 97 S.W.3d 589, 593 (Tex. Crim. App. 2003).  Determining which standard applies depends
upon whether the complaining party had the burden of proof at trial.  Id. 
If the complaining party did not have the burden of proof, then the “manifestly
unjust” standard applies.  Id.  On the other hand, if the complaining party
had the burden of proof, then the “against the great weight and preponderance”
standard applies.  Id.  Under the Texas Court of Criminal Appeals’
modified approach, if the defendant challenges the factual sufficiency of the
elements of the offense, even though the State had the burden of proof, we must
review the evidence using both standards. 
Id.  Thus, when reviewing
factual sufficiency challenges, we must determine “whether a neutral review of
all of the evidence, both for and against the finding, demonstrates that the
proof of guilt is so obviously weak as to undermine confidence in the jury’s
determination, or the proof of guilt, although adequate if taken alone, is
greatly outweighed by contrary proof.”  Johnson
v. State, 23 S.W.3d 1, 11 (Tex. Crim. App. 2000).  








With respect to factual
sufficiency, appellant cites his own testimony that while he was a passenger in
Juan’s car, it was stolen by another black man. 
Appellant testified he was only in Juan’s car to sell Juan drugs and
denied owning a gun or beating Juan with a gun. 
Instead, appellant claims the other man, Charlie, demanded money from
Juan and beat him with the gun.  

The jury is the sole
judge of the facts, the credibility of the witnesses, and the weight to be
given the evidence.  Wyatt v. State,
23 S.W.3d 18, 30 (Tex. Crim. App. 2000); Beckham v. State, 29 S.W.3d
148, 152 (Tex. App.CHouston
[14th Dist.] 2000, pet. ref’d). 
Therefore, the jury may believe or disbelieve all or part of any witness’s
testimony.  Jones v. State, 984
S.W.2d 254, 258 (Tex. Crim. App. 1998). 
Reconciliation of any conflicts in the evidence falls within the
exclusive province of the jury.  Heiselbetz
v. State, 906 S.W.2d 500, 504 (Tex. Crim. App. 1995).  

The jury was entitled to
determine the weight to be given the evidence and the credibility of the
witnesses and whether or not to believe the testimony of any witness.  By its verdict, the jury apparently chose to
believe Juan’s version of the events, not appellant’s.  Viewing the evidence without the prism of in
the light most favorable to the prosecution, we find the evidence factually
sufficient to support the verdict. 
Appellant’s second issue is overruled.

Accordingly, the judgment
of the trial court is affirmed.  

 

 

 

 

/s         J. Harvey Hudson

Justice

 

 

Judgment rendered and Memorandum Opinion filed July 10, 2003.

Panel consists of Justices Yates, Hudson, and Frost.

Do Not Publish C Tex. R. App. P. 47.2(b).