11th
Court of Appeals

                                                                  Eastland,
Texas

                                                                        Opinion

 

Zachary
Tyler Smith

Appellant

Vs.                   No. 11-02-00262-CR B
Appeal from Erath County

State
of Texas

Appellee

 

The jury convicted Zachary Tyler Smith of the
capital murder of Jerry and Kelly Thomas, and the trial court assessed his
punishment at confinement for life.  We
affirm.

Central to his complaints on appeal are appellant=s contentions that the tape recordings
of his telephone conversations with Jeffrey Harold Oslin were
inadmissible.  Appellant argues that the
tapes of these conversations were improperly admitted because appellant was
never told that his conversations were being recorded, because he was never
given his Miranda[1]
warnings prior to the conversations, and because Oslin was acting as an agent
of the State. 








The record reflects that, shortly after the August
2001 murders, Oslin gave appellant a ride from the Fort Worth area to the bus
station in Houston.  During the trip,
appellant told Oslin that he and a Aguy
named Flea@ went to
a house to kill some people for the money from an insurance policy, that he
shot the man in the chest, that Flea shot the woman who was Flea=s aunt, and that the woman was not dead
so he finished her off.  Flea was a
nickname for Bobby Landon DeWeese.  Oslin
told law enforcement authorities about the conversation.  Appellant was located and taken into custody.  Later, in December 2001 while he was in
custody, appellant called Oslin=s
mother=s house A[m]any, many times.@ 
During this time, Oslin was in the Harris County Jail on unrelated
charges.  Oslin=s
mother told appellant that Oslin would be home around noon.  Law enforcement officers brought Oslin to his
mother=s house
on December 21, 2001, and taped the incoming calls from appellant to
Oslin.  Texas Ranger Andrew Carter
testified that no promises were made to Oslin and that, while he did instruct
Oslin not to speak in any sort of code, he did not have a conversation with
Oslin about what they wanted to achieve during appellant=s
phone call to Oslin.

Oslin testified at the suppression hearing that it
was his idea to aid the law enforcement. Oslin was in custody on a new drug
charge at the time of the phone calls. 
Oslin stated that he was not promised anything and that he was returned
to jail after the calls.  Oslin also
testified that the only instruction he was given was to Afind
out what [appellant] was calling for.@  Oslin said that he had Aenough trouble going on@ of his own and that he did not want to
be involved in appellant=s
situation with the murders.

At the suppression hearing, appellant testified
that he was confined in the Erath County Jail at the time he called Oslin.  Appellant stated that the only reason he
called Oslin was because Oslin=s
mother had told him to.  Oslin did not
say that he was in custody at the time; he did not say that anything appellant
said might be used against appellant; and he did not tell appellant that he had
the right to counsel or that he could terminate the conversation at any
time.  Appellant stated that he initiated
each call and that he had previously called A[n]umerous@ times wanting to speak with
Oslin.  Appellant testified that he
called on December 21 because he wanted to talk to Oslin Areal bad.@

Appellant argues in his third point of error that
the trial court erred by denying his motion to suppress the tapes of his phone
calls to Oslin.  We disagree.

In Manns v. State, 122 S.W.3d 171, 178
(Tex.Cr.App.2003), the Court of Criminal Appeals recited the standards of
review set forth in Guzman v. State, 955 S.W.2d 85 (Tex.Cr.App.1997), as
follows:

An
appellate court should afford Aalmost
total deference@ to a
trial court=s deter-
mination of the historical facts and to its determination of mixed questions of
law and fact that turn on an evaluation of credibility and demeanor.  Mixed questions of law and fact that do not
turn on credibility and demeanor are to be reviewed do novo.

 

A question Aturns@ on an evaluation of credibility and
demeanor when the testimony of one or more witnesses, if believed, is always
enough to add up to what is needed to decide the substantive issue.  Loserth v. State, 963 S.W.2d 770, 773
(Tex.Cr.App.1998).  The record must be
reviewed in the light most favorable to the trial court=s
ruling, and the trial court=s
ruling will be sustained if it is reason- ably correct on any theory of law
applicable to the case.  Guzman v.
State, supra.








The record does not support appellant=s contentions that Oslin was acting as
an agent of the  State and that,
therefore, Oslin should have given appellant Miranda warnings for the
tapes to be admissible.  In each phone
call, appellant initiated the call by phoning Oslin=s
mother=s house
collect.  The record also reflects that
both appellant and Oslin were in custody at the time of the conversations and
that their relationship was analogous to conversations between inmates. Such
conversations are admissible unless one of the inmates is acting as an agent of
the State.  Manns v. State, supra;
State v. Scheineman, 77 S.W.3d 810, 813 (Tex.Cr.App.2002).  While the record clearly reflects that Oslin
was hopeful that his cooperation would benefit him with his other Atrouble@
with the law, nothing in the record reflects that Oslin was acting under the
direction of, or on behalf of, the State. 
Without the involvement of an agent of the State, appellant=s rights to counsel, to Miranda
warnings, or to the requirements of TEX. CODE CRIM. PRO. ANN. art. 38.22
(Vernon Pamph. Supp. 2004) were not invoked. 
Therefore, the trial court did not err in denying the motion to
suppress.  The third point is overruled.

In the first and second points, appellant
challenges the legal and factual sufficiency of the evidence.  Under these points, appellant appears to base
his arguments at least in part on Oslin=s
testimony and on his argument that Oslin acted as an agent of the State.  In his fourth point, appellant contends that
the trial court erred in overruling his motion for directed verdict because the
State did not prove its case beyond a reasonable doubt and because the
accomplice testimony was not sufficiently corroborated. We note that a
challenge to the trial court=s
denial of a motion for directed verdict is a challenge to the legal sufficiency
of the evidence.  Canales v. State,
98 S.W.3d 690, 693 (Tex.Cr.App.2003); Fluellen v. State, 104 S.W.3d 152
(Tex.App. - Texarkana 2003, no pet=n).








In order to determine if the evidence is legally
sufficient, we must review all of the evidence in the light most favorable to
the verdict and determine whether any rational trier of fact could have found
the essential elements of the crime beyond a reasonable doubt.  Jackson v. Virginia, 443 U.S. 307
(1979); Jackson v. State, 17 S.W.3d 664 (Tex.Cr.App.2000).  In order to determine if the evidence is
factually sufficient, we must review all of the evidence in a neutral light and
determine whether the evidence supporting guilt is so weak as to render the
conviction clearly wrong and manifestly unjust or whether the evidence
supporting guilt, although adequate when taken alone, is so greatly outweighed
by the overwhelming weight of contrary evidence as to render the conviction
clearly wrong and manifestly unjust.  Vasquez
v. State, 67 S.W.3d 229, 236 (Tex.Cr.App.2002); Goodman v. State, 66
S.W.3d 283 (Tex.Cr.App.2001); Johnson v. State, 23 S.W.3d 1, 11
(Tex.Cr.App.2000); Cain v. State, 958 S.W.2d 404 (Tex.Cr.App.1997); Clewis
v. State, 922 S.W.2d 126 (Tex.Cr.App.1996). 
In determining whether accomplice witness testimony has been
sufficiently corroborated, the appellate court must review all of the
non-accomplice evidence presented and determine if that evidence tends to connect
appellant to the offense.  Gosch v.
State, 829 S.W.2d 775, 777 (Tex.Cr.App.1991); Reed v. State, 744
S.W.2d 112, 126 (Tex.Cr.App.1988). 
Corroboration is not sufficient if it merely shows that the offense was
committed.  TEX. CODE CRIM. PRO. ANN.
art. 38.14 (Vernon 1979).

Tally-Kaye Roberts testified that she went to her
parents= home on
Highway 281 north of Stephenville in Erath County and found the body of her
father, Jerry Thomas, in the kitchen and the body of her mother, Kelly Thomas,
outside a bedroom window.  Dr. Jennie
Duval testified that she performed the autopsy on Jerry and that she reviewed
the autopsy report on Kelly.  Dr. Duval
stated that both Jerry and Kelly died of multiple gunshot wounds and that they
died Awithin
minutes to hours of each other.@  Texas Department of Public Safety firearms
examiner William Sorrow testified that the bullets recovered from Jerry=s abdomen and back and the bullet
recovered from Kelly=s
head were fired from the same gun, but that the bullet recovered from Kelly=s thigh was fired from another gun.

Oslin testified that appellant stated that he shot
the man two or three times in the chest and that he shot the woman to Afinish[] her off.@ 
Oslin also stated that appellant said that he left the home in Jerry=s vehicle and that the vehicle was
later burned.  The jury heard the
recordings of appellant=s
phone calls to Oslin.  In the
conversations, appellant denied that he killed anyone, asked Oslin to act like
nothing happened and to tell law enforcement authorities that Oslin did not
give him a ride to Houston, and eventually offered to take Oslin=s drug charge by telling the officers
that the drugs were his and to pay Oslin $20,000.

Scott Byrd testified that, while appellant and he
were confined in the same jail in Louisiana, appellant said that he had shot a
man and a woman in Texas.  Sonia Hoesch
testified that she saw appellant and Flea in a Ablue
Chevy truck@ and that
appellant, Flea, and Wesley Ray Cole, Jr. later left to destroy the vehicle.








Cole testified that he went with appellant and
DeWeese to Jerry and Kelly=s
home.  Appellant and DeWeese went around
to the back of the home while Cole sat in the car and listened to the
radio.  Cole heard three gunshots and
then saw a woman open a window.  The woman
looked like she was struggling to get out. 
She put her right foot out of the window, and then her body went limp
and fell out of the window.  Next, Cole
saw appellant lean out of the window and shoot the woman.

DeWeese testified that he shot Kelly once as she
tried to climb out of the window and that she fell to the ground.  DeWeese stated that appellant shot Jerry Aa number of times.@ 
Cole left in the vehicle that they had driven to Jerry and Kelly=s home. 
DeWeese and appellant left in Jerry=s
blue Chevy pickup.  They discussed
selling the pickup.  However, later, they
removed the VIN number from the pickup and burned the pickup in a field Ain the middle of Arlington.@

The non-accomplice testimony of Dr. Duval, Sorrow,
Oslin, and Byrd sufficiently corroborate Cole=s
and DeWeese=s
accomplice testimony.  When all of the
evidence is viewed in the light most favorable to the verdict, a rational trier
of fact could have found the essential elements of the crime beyond a
reasonable doubt.  Therefore, we find
that the evidence is legally sufficient. 
When all of the evidence is viewed in a neutral light, the evidence
supporting guilt is neither so weak as to render the conviction clearly wrong
and manifestly unjust nor so greatly outweighed by the overwhelming weight of
contrary evidence as to render the conviction clearly wrong and manifestly
unjust.   We find that the evidence is
also factually sufficient.  The first,
second, and fourth points are overruled.

The judgment of the trial court is affirmed.

 

JIM R. WRIGHT

JUSTICE

June 30, 2004

Do not publish.  See
TEX.R.APP.P. 47.2(b).

Panel
consists of: Arnot, C.J., and

Wright,
J., and McCall, J.











[1]Miranda v. Arizona, 384 U.S. 436 (1966).