

# NUMBER 13-23-00094-CR

# COURT OF APPEALS

# THIRTEENTH DISTRICT OF TEXAS

# CORPUS CHRISTI – EDINBURG

GABRIEL LOUIS CASTELLANO JR.,            Appellant,

v.

THE STATE OF TEXAS,            Appellee.

### On appeal from the 24th District Court
### of Victoria County, Texas.

# MEMORANDUM OPINION

**Before Chief Justice Contreras and Justices Benavides and Tijerina**
**Memorandum Opinion by Justice Tijerina**

Appellant Gabriel Louis Castellano Jr. appeals his convictions of manufacture and delivery of a controlled substance in Penalty Group 1 (heroin) greater than or equal to four grams but less than 200 grams (count one), a first-degree felony, *see* TEX. HEALTH & SAFETY CODE ANN. § 481.112(d), and assault of a family member by impeding breath or

circulation (count two), a third-degree felony.[1] *See* TEX. PENAL CODE ANN. § 22.01. Appellant received a sentence of sixty-years' confinement for count one and seventy-years for count two. By three issues, appellant contends that (1) his trial counsel rendered ineffective assistance; (2) the trial court abused its discretion in overruling his objection to the State's rebuttal argument; and (3) he was egregiously harmed by an erroneous parole instruction in the punishment charge. We affirm.

## I. BACKGROUND

Mystikal Kelly, appellant's former girlfriend, testified that on November 5, 2021, she and appellant had an argument at her home, and he pushed her into the bedroom. Kelly testified that once in the bedroom, appellant continued to push her, and he knocked her to the ground, while the couple yelled and argued. Kelly said that appellant dragged her to the bathroom and wrapped his arm around her using it as a lock in an "L shape," which she described as a "choke hold." According to Kelly, she was unable to breathe. Margarita Kelly, Kelly's mother, testified that she witnessed appellant push Kelly into the bedroom and that it sounded as if appellant was trying to kill Kelly. Margarita feared for Kelly's safety, and she called 911.

Victoria Police Department officer, Trenton Ballard, testified that he responded to the 911 dispatch, and when he arrived at the home, he encountered Margarita, who was distressed and concerned about Kelly's safety. Officer Ballard stated that he heard yelling

---

[1] Punishments for both counts were enhanced by appellant's plea of true to two enhancement paragraphs. Thus, after finding appellant guilty, the jury was instructed to sentence him for not more than a life sentence or ninety-nine years' confinement or less than twenty-five years. *See* TEX. PENAL CODE ANN. § 12.42(d) (enhancing the punishment of a felony offense other than a state jail felony when the defendant has previously been convicted of two prior felonies to "imprisonment . . . for life, or for any term of not more than 99 years or less than 25 years").

2

and something "being thrown or somebody being hit . . . ." Officer Ballard went to the bedroom, and he testified that he saw appellant walk out of the bathroom followed by Kelly. Officer Ballard placed appellant in handcuffs, and he observed "quite a bit" of a green, leafy substance that he identified as marihuana all over the bedroom and on the floor. Additionally, Officer Ballard saw several ten-gallon totes containing marihuana, and he observed stems of "weed plants" that were hanging. Officer Ballard testified that Kelly told him that appellant had choked her and that he observed redness around her neck.

Detective Timothy Ramirez with the Victoria Police Department testified that he was later dispatched to the residence due to the large quantity of marihuana. Detective Ramirez's partner acquired a search warrant, and they searched the residence and found a safe. Detective Ramirez stated that Kelly and Margarita denied having a key or combination to open the safe, so the officers pried it open. According to Detective Ramirez, the safe contained several coins, numerous multicolored pills that Detective Ramirez recognized as ecstasy, and a large amount of a brown substance that Detective Ramirez recognized as heroin, which he claimed weighed 12.42 grams. Additionally, the safe had appellant's social security card and $2,056 in cash. Subsequently, the trial court admitted a certificate of analysis stating that the heroin tested weighed 4.59 grams. Detective Ramirez read from the certificate at trial. The forensic scientist who tested the heroin did not appear at trial.

The jury found appellant guilty of both counts, and this appeal followed.

## II.    INEFFECTIVE ASSISTANCE OF COUNSEL

By his first issue, appellant contends that his trial counsel was ineffective because

he did not object to several instances of hearsay.

## A. Standard of Review and Applicable Law

Claims of ineffective assistance of counsel are evaluated under the two-part test articulated by the United States Supreme Court in *Strickland v. Washington*. *See Goodspeed v. State*, 187 S.W.3d 390, 392 (Tex. Crim. App. 2005) (citing *Strickland v. Washington*, 466 U.S. 668, 687 (1984)); *Thompson v. State*, 9 S.W.3d 808, 812 (Tex. Crim. App. 1999). First, appellant must show that counsel's performance was deficient, or in other words, that counsel's assistance fell below an objective standard of reasonableness. *Thompson*, 9 S.W.3d at 812; *see Strickland*, 466 U.S. at 687. Then appellant must show that there is a reasonable probability that, but for counsel's errors, the result would have been different. *Thompson*, 9 S.W.3d at 812; *see Strickland*, 466 U.S. at 694.

It is appellant's burden to prove counsel was ineffective by a preponderance of the evidence, and we review counsel's performance by the totality of the representation, not by isolated acts or omissions. *Thompson*, 9 S.W.3d at 812, 813. "[T]rial counsel should ordinarily be afforded an opportunity to explain his actions before being denounced as ineffective." *Goodspeed*, 187 S.W.3d at 392. "Absent such an opportunity, an appellate court should not find deficient performance unless the challenged conduct was so outrageous that no competent attorney would have engaged in it." *Id.* Appellant must overcome the strong presumption that counsel's conduct fell within the wide range of reasonable professional assistance and that his actions could be considered sound trial strategy. *See Strickland*, 466 U.S. at 689; *Jaynes v. State*, 216 S.W.3d 839, 851 (Tex.

4

App.—Corpus Christi–Edinburg 2006, no pet.). We do not second-guess legitimate tactical or strategic decisions made by trial counsel. *State v. Morales*, 253 S.W.3d 686, 696 (Tex. Crim. App. 2008). An allegation of ineffectiveness must be "firmly founded in the record." *Bone v. State*, 77 S.W.3d 828, 833 n.13 (Tex. Crim. App. 2002) (quoting *Thompson*, 9 S.W.3d at 813–14).

"Hearsay" is an out-of-court statement offered to prove the truth of the matter asserted. TEX. R. EVID. 801(d). Hearsay is generally inadmissible, TEX. R. EVID. 802, but there are several exceptions to the rule. *See* TEX. R. EVID. 803, 804. "The hearsay doctrine . . . is designed to exclude out-of-court statements offered for the truth of the matter asserted that pose any of the four 'hearsay dangers' of faulty perception, faulty memory, accidental miscommunication, or insincerity." *Alcala v. State*, 476 S.W.3d 1, 21 (Tex. App.—Corpus Christi–Edinburg 2013, pet. ref'd) (internal citations omitted).

## B.    Detective Ramirez

Appellant first faults his trial counsel for not objecting to Detective Ramirez's testimony that the substance found in the safe was heroin and that it weighed 12.42 grams.[2] The record is silent regarding trial counsel's reason for failing to object to the complained-of statements. And we cannot say that counsel's action was so outrageous

---

[2] By what we construe as a sub-issue to his first issue, appellant argues that his trial counsel should have objected to the admission of the "Certificate of Analysis" from Jessica Jackson, the forensic scientist who tested the substance, and instead should have asserted his "Sixth Amendment right to confrontation and demand that Jackson testify at trial." However, appellant does not provide citation to pertinent authority with a clear and concise argument supporting a conclusion that his trial counsel's failure to "demand" that Jackson testify constituted ineffective assistance of counsel. Moreover, the record is silent regarding counsel's reason for not doing so. *See Lopez v. State*, 343 S.W.3d 137, 144 (Tex. Crim. App. 2011) (concluding that because the record was silent regarding trial counsel's reasons for failing to object to outcry-witness testimony that could have easily been produced by a hearing on a motion for new trial, the appellant failed to meet his burden under the first prong of *Strickland*). Accordingly, we overrule this sub-issue.

that no competent attorney would have engaged in it. *See Goodspeed*, 187 S.W.3d at 392. Therefore, appellant has not overcome the strong presumption that trial counsel's conduct fell within the wide range of reasonable professional assistance and that trial counsel's actions could be considered sound trial strategy. *See Strickland*, 466 U.S. at 689; *Jaynes*, 216 S.W.3d at 851; *see also Ex parte Varelas*, 45 S.W.3d 627, 632 (Tex. Crim. App. 2001) (explaining that "the bare record does not reveal the nuances of trial strategy" and recognizing that concluding trial counsel was ineffective by failing to request a limiting instruction based on a silent record "would call for speculation and such speculation is beyond the purview" of an appellate court).

In any event, "[t]o establish ineffective assistance of counsel based on a failure to object, appellant must demonstrate that the trial court would have committed harmful error in overruling the objection had trial counsel objected." *Toledo v. State*, 519 S.W.3d 273, 287 (Tex. App.—Houston [1st Dist.] 2017, pet. ref'd). At first glance, it appears appellant appears to argue that Detective Ramirez's testimony is hearsay because he relied on information contained in the certificate of analysis stating there was 4.59 grams of heroin.

> Article 38.41 states that
>
> [a] certificate of analysis that complies with this article is admissible in evidence on behalf of the state or the defendant to establish the results of a laboratory analysis of physical evidence conducted by or for a law enforcement agency without the necessity of the analyst personally appearing in court.

TEX. CODE CRIM. PROC. ANN. art. 38.41. An objection on the basis of hearsay to Detective Ramirez's reliance on the certificate of analysis that the substance was heroin would not have been sustained by the trial court because the certificate of analysis was admissible

6

pursuant to article 38.41. Further, appellant provides no authority stating that despite article 38.41, the information contained in the analysis is inadmissible hearsay, and we find none. *See Toledo*, 519 S.W.3d at 287. Next, as to Detective Ramirez's statement that the heroin weighed 12.42 grams, appellant has not explained how the trial court would have erred by overruling a hearsay objection to this statement. Moreover, appellant does not explain why but for his trial counsel's alleged error in not objecting to the complained-of statement, there is a reasonable probability that he would have been acquitted of the offense when the certificate of analysis indicated there was over four grams of heroin, thereby satisfying the weight element of the offense. *See id.*; *see also* TEX. HEALTH AND SAFETY CODE ANN. § 481.112(d).

Next, appellant argues that his trial counsel should have objected on the basis of hearsay when Detective Ramirez testified that he had to break into the safe because Kelly and Margarita did not know the combination or have a key. Specifically, Detective Ramirez said, "[he had talked] to both Margarita and [Kelly], and neither one of them had the code or the keys to the safe." Prior to Detective Ramirez's testimony, Margarita testified that there were two safes in the home, and she did not know the combinations and did not know their locations. Kelly later testified that she was aware of the safe that contained the heroin, but she did not know the combination and she did not have any personal items in it. She said, "I didn't know what was in the safes. I didn't have access to those."

Because Margarita and Kelly testified that each lacked access to the safe, appellant cannot show how he was harmed by Detective Ramirez's statement to the same

7

effect. *See Leday v. State*, 983 S.W.2d 713, 718 (Tex. Crim. App. 1998) (holding that the erroneous admission of evidence is harmless when that same evidence is later admitted without objection). Therefore, appellant has failed to meet the second prong of *Strickland*. *See Thompson*, 9 S.W.3d at 812; *see Strickland*, 466 U.S. at 694.

Next, appellant complains that his trial counsel failed to object to the following testimony by Detective Ramirez:

> It's my understanding after speaking with crime scene personnel, who have contact with the Corpus Christi lab almost on a daily basis, that the lab will only test up to the next penalty range, and then they don't analyze anymore of the drugs, so in this instance for the PG-1 charge, you have less than one gram. And you have one to four grams and then you have four to 200 grams, so they test up to the four grams to get it to that penalty range.
>
> . . . .
>
> Ramirez repeated crime-scene personnel repeating DPS lab staff, and the statement was offered for the truth of the matter asserted: namely, that DPS's analysis is informed by drug penalty ranges. This testimony was clearly hearsay within hearsay and inadmissible.

The record is silent regarding trial counsel's reason for failing to object to the complained-of statements, and he has not provided any explanation as to how his trial counsel's performance could not be considered sound trial strategy. Moreover, counsel's actions were not so outrageous that no competent attorney could have engaged in them. Therefore, appellant has not overcome the strong presumption that trial counsel's conduct fell within the wide range of reasonable professional assistance and that trial counsel's actions could be considered sound trial strategy. *See Strickland*, 466 U.S. at 689; *Goodspeed*, 187 S.W.3d at 392; *Jaynes*, 216 S.W.3d at 851; *see also Ex parte Varelas*, 45 S.W.3d at 632. Moreover, without more, we are unable to conclude that but for

8

appellant's trial counsel's failure to object to the above testimony, there is a reasonable probability appellant would have been acquitted of the offense. *See Thompson*, 9 S.W.3d at 812; *see Strickland*, 466 U.S. at 694.

## C. Margarita

Next, appellant argues that his trial counsel should have objected on the basis of hearsay when Margarita testified that Kelly told her that appellant "pulled her out of the bed by her hair, and then when she was pregnant, he kicked her in the stomach."

Again, the record is silent regarding trial counsel's reason for failing to object to the complained-of statements, and counsel's actions were not so outrageous that no competent attorney could have engaged in them. It is possible that trial counsel may have not wanted to call more attention to other instances of abuse by objecting. *See Webb v. State*, 995 S.W.2d 295, 301 (Tex. App.—Houston [14th Dist.] 1999, no pet.) ("[T]rial counsel may have purposely decided not to request a limiting instruction to prevent further attention being drawn to the extraneous offenses."). Therefore, appellant has not overcome the strong presumption that trial counsel's conduct fell within the wide range of reasonable professional assistance and that trial counsel's actions could be considered sound trial strategy. *See Strickland*, 466 U.S. at 689; *Goodspeed*, 187 S.W.3d at 392; *Jaynes*, 216 S.W.3d at 851; *see also Ex parte Varelas*, 45 S.W.3d at 632.

Moreover, Kelly testified that on the Fourth of July, appellant "became violent," hit her in the car, "stopped the car in the middle of the road, pushed [her] out of the car[,] and left [her] there." She said that appellant arrived home from work, and he "drug [her] out of bed by [her] hair and started hitting on [her]." According to Kelly, in December of 2020,

9

appellant "drug" her "out of bed . . . started beating [her], hitting [her] in [her] face and in [her] back and started kicking [her] when [she] was down." Kelly said, "I was trying to get up and like try to get help, and I like finally got up, and my daughter came out, and she seen him throw me to the ground, and she was crying and (weeping) . . . and he just didn't care, and then I called the cops." Kelly testified that in 2020 she became pregnant with appellant's child, and during the pregnancy he was "distant, mean, abusive." Kelly stated that appellant physically assaulted her one time when she was pregnant. She said, "We had an argument, and he started pushing on me, and he threw me to the ground, and then we—I was trying to get up, and he backed me into the wall, and he kicked me in my stomach (weeping)." Finally, Kelly testified that on November 5, 2021, appellant pushed her into the bedroom in front of her children, threw her to the ground, prevented her from getting up from the floor, pulled her to the bathroom, and wrapped his arm "around her neck" in a choke hold, which prevented her from breathing. Kelly not only testified about the incident that occurred when she was pregnant, she also stated that appellant had committed the charged offense, among other offenses.

Accordingly, because Kelly testified that appellant committed many instances of assault against her, including testifying about the incident that Margarita had previously related, appellant has failed to show that the trial court would have committed reversible error in overruling a hearsay objection to Margarita's testimony. *See Leday*, 983 S.W.2d at 718. Additionally, we cannot conclude that but for appellant's trial counsel's failure to object to the complained-of testimony, there is a reasonable probability appellant would have been acquitted as the same evidence was admitted without objection elsewhere.

10

*See Thompson*, 9 S.W.3d at 812; *see Strickland*, 466 U.S. at 694; *see also Leday v. State*, 983 S.W.2d 713, 717 (Tex. Crim. App. 1998) ("'It is well established that the improper admission of evidence does not constitute reversible error if the same facts are shown by other evidence which is not challenged.'"). We overrule appellant's first issue.

### III.    CLOSING ARGUMENT

By his second issue, appellant contends that the trial court abused its discretion in overruling his objection to the State's closing argument during the guilt/innocence phase of trial. Specifically, appellant argues that the State mischaracterized his closing argument during its rebuttal by attacking a straw man. Appellant explains that during his closing argument, he "urged the jury that [Kelly] was not a credible witness," but he "never argued . . . that black eyes allegedly inflicted by [appellant] on a prior occasion were in fact caused by running makeup."

### A.    Standard of Review and Applicable Law

An appellate court reviews a trial court's ruling on an objection to improper jury argument for abuse of discretion. *Garcia v. State*, 126 S.W.3d 921, 924 (Tex. Crim. App. 2004). Permissible jury argument generally falls into one of four areas: (1) summation of the evidence, (2) reasonable deduction from the evidence, (3) an answer to the argument of opposing counsel, or (4) a plea for law enforcement. *Davis v. State*, 329 S.W.3d 798, 821 (Tex. Crim. App. 2010).

### B.    Analysis

During closing argument, the State said, "There's clear bruising on [Kelly's] eye. I have a picture up here from the body camera. You'll be able to see it. It's not mascara

11

running. That is wild." Appellant's trial counsel objected, stating, "I never said that . . . . I didn't say she had mascara running." On appeal, the State responds that it was not error for the trial court to overrule appellant's objection because during the trial, appellant asked Detective Ramirez, "[Y]ou do remember she had two black eyes; right?" Detective Ramirez replied, "Yes, sir." Appellant asked, "And she is crying, and part of her mascara is running?" Detective Ramirez said, "I don't know about the mascara, sir."

We will assume for purposes of our analysis that the State's argument was improper, and the trial court erred in overruling appellant's objection to it. *See id.* at 572. Accordingly, we will next determine whether appellant suffered harm. *See Martinez v. State*, 17 S.W.3d 677, 692 (Tex. Crim. App. 2000).

"Improper jury argument is generally non-constitutional error." *Id.* Non-constitutional error that does not affect substantial rights must be disregarded. *Brown v. State*, 270 S.W.3d 564, 570 (Tex. Crim. App. 2008). Errors that affect a defendant's substantial rights "are those that affect the very basis of the case, deprive the defendant of a valuable right, vitally affect the defensive theory, or make a case for conviction clearly and significantly more persuasive." *Taylor v. State*, 332 S.W.3d 483, 490 (Tex. Crim. App. 2011). Whether an improper argument affects substantial rights depends on the (1) severity of the misconduct (prejudicial effect), (2) curative measures, and (3) the certainty of conviction and sentence absent the misconduct. *Martinez*, 17 S.W.3d at 692–93. "Further, in evaluating the severity of the misconduct, we must assess 'whether [the] jury argument is extreme or manifestly improper [by] look[ing] at the entire record of final arguments to determine if there was a willful and calculated effort on the part of the State

to deprive appellant of a fair and impartial trial.'" *Brown*, 270 S.W.3d at 573.

Although no curative instruction was requested or given, we cannot say that the comment made by the State was severe because during the trial, appellant asked Detective Ramirez to opine on whether part of the discoloration of Kelly's eyes could have been due to mascara running. The State was attempting to show the jury that it should believe Kelly when she said that the picture showed that she had two black eyes and not believe appellant's suggestion or implication that the discoloration was due to running mascara. *See Martinez*, 17 S.W.3d at 693 (determining that "[t]he prosecutor's comment that the victims . . . cry out for the death penalty" was mild). Thus, looking at the entire record, we cannot conclude that under these circumstances that there was a willful and calculated effort by the State to deprive appellant of a fair and impartial trial. This factor weighs in favor of finding that appellant's substantial rights were not severely prejudiced. *See id.*

Finally, regarding the certainty of conviction absent the misconduct, we note that the State was not required to prove that appellant caused Kelly's black eyes in order to convict appellant of count two. Instead, the State had to prove that appellant committed assault by impeding Kelly's breath or circulation by intentionally, knowingly, or recklessly causing bodily injury to Kelly and that Kelly was appellant's family or household member. *See* TEX. PENAL CODE ANN. § 22.01(a), (b)(2)(B). Kelly testified that appellant lived with her, they were in a romantic relationship, appellant choked her on November 5, 2021, she was unable to breathe, and she felt pain. Additionally, Officer Ballard testified that on November 5, 2021, he observed that Kelly had what appeared to be red marks on her

neck indicating that someone had strangled her. Officer Ballard stated Kelly told him that appellant had choked her causing her pain and the inability to breath. Thus, this factor also weighs in favor of finding that appellant's substantial rights were not affected by the State's comment.

Therefore, we conclude that appellant's substantial rights were not affected by the trial court's error in denying his objection to the State's comment after examining (1) the severity of the misconduct, (2) curative measures, and (3) the certainty of conviction and sentence absent the misconduct. See *Martinez*, 17 S.W.3d at 692–93. We overrule appellant's second issue.

## IV. PUNISHMENT JURY CHARGE

By his third issue, appellant contends that the jury charge on punishment included an erroneous parole instruction that was egregiously harmful. The complained-of jury instruction states:

> Under the law applicable in this case, if the Defendant is sentenced to a term of imprisonment, he will not become eligible for parole until the actual time served equals one-fourth of the sentence imposed, without consideration of any good conduct time he may earn. Eligibility for parole does not guarantee that parole will be granted.

Appellant argues that, contrary to the instruction above, he "will be eligible for release on parole when his actual calendar time served plus good conduct time equals one-fourth of his sentence or fifteen years, whichever is less." *See* TEX. GOV'T CODE ANN. § 508.145(f). Therefore, according to appellant, the above instruction is erroneous because it states that he "will be eligible for parole when his time served equals one-quarter of his sentence, period," and it omits "or fifteen years, whichever is less." The

14

State responds that, even assuming there was error in the charge, the error did not cause egregious harm to appellant. For purposes of our analysis, we presume that the omission of the "or 15 years, whichever is less" language in the jury charge constituted error, and we will thus determine whether the purported charge error constituted egregious harm under *Almanza*. *See Almanza v. State*, 686 S.W.2d 157, 172 (Tex. Crim. App. 1984).

At the charge conference, appellant did not voice the specific jury-error complaint that he asserts on appeal. Therefore, any reversal based on the alleged charge error requires a showing of egregious harm. *See Cosio v. State*, 353 S.W.3d 766, 777 (Tex. Crim. App. 2011).

In our egregious-harm analysis, we must examine the entire record to determine whether the defendant suffered actual rather than theoretical harm. *Marshall v. State*, 479 S.W.3d 840, 843 (Tex. Crim. App. 2016). For actual harm to be established, the charge error must have affected "the very basis of the case," "deprive[d] the defendant of a valuable right," or "vitally affect[ed] a defensive theory." *Olivas v. State*, 202 S.W.3d 137, 144 (Tex. Crim. App. 2006) (first quoting *Hutch v. State*, 922 S.W.2d 166, 171 (Tex. Crim. App. 1996) and then quoting *Almanza*, 686 S.W.2d at 172)). When assessing harm based on the particular facts of the case, we consider: (1) the entire jury charge; (2) the state of the evidence; (3) the parties' arguments; and (4) all other relevant information in the record. *Marshall*, 479 S.W.3d at 843.

As to count one, although the charge included that appellant would be eligible for parole when he served one-fourth of his sentence, it omitted "or fifteen years, whichever is less." In other words, the charge failed to tell the jury that appellant would be eligible

15

for parole if he either (1) served one-fourth of his sentence or (2) served fifteen years of his sentence depending on which amount was less. However, it is irrelevant that the charge omitted from its instruction the language "or fifteen years, whichever is less" because one-fourth of sixty years is fifteen years. In other words, appellant is unable to demonstrate that any harm came from the exclusion of the "or 15 years, whichever is less" language in the trial court's instruction because one-fourth of the sentence imposed in this case is equal to fifteen years. *See Waters v. State*, 743 S.W.2d 753, 757 (Tex. App.—San Antonio 1987, no pet.) (explaining that the record did not reflect that the charge's omission of "or twenty years, whichever is less . . . [a]ffected the sentence, and was therefore harmless"); *see also Maxie v. State*, No. 06-12-00140-CR, 2013 WL 839144, at *4 (Tex. App.—Texarkana Mar. 6, 2013, no pet.) (mem. op., not designated for publication) (providing that additional language stating "15 years, whichever is less . . . is unnecessary because one-fourth of any second[-] or third[-]degree sentence will necessarily be less than fifteen years"). This mitigates against finding egregious harm.

The charge informed the jury that appellant may be entitled to the good conduct time and that his sentence "might be reduced by the award of parole."[3] The charge said, "Eligibility for parole does not guarantee that parole will be granted" and that "[i]t cannot be accurately predicted how the parole law and good conduct time might be applied" to appellant "because the application of these laws will depend on decisions made by prison

---

[3] Article 37.07, Section 4(a) of the Code of Criminal Procedure was amended in 2019 and no longer refers to good-conduct time. *See* Tex Code Crim. Proc. Ann. art. 37.07, § 4(a). Instead, the current version of Section 4(a) refers only to parole. *See id.* This amendment applies to a defendant sentenced for an offense on or after the effective date of September 1, 2019, regardless of when the offense was committed. *See* Act of May 15, 2019, 86th Leg., R.S., ch. 260, § 2, 2019 Tex. Sess. Law Serv. 446, 448.

and parole authorities." Finally, the charge stated the following: "You may consider the existence of the parole law and good conduct time. . . . You are not to consider the manner in which the parole law may be applied to [appellant]." Thus, "the parole instruction contained the standard curative language admonishing the jury not to consider the extent to which the parole law might be applied to the defendant." *Igo v. State*, 210 S.W.3d 645, 647 (Tex. Crim. App. 2006); *see also McGee v. State*, No. 11-13-00124-CR, 2015 WL 3799362, at *7 (Tex. App.—Eastland June 11, 2015, no pet.) (mem. op., not designated for publication) ("These instructions were mitigating and curative of the erroneous instructions because they instructed the jury that one cannot predict how parole law and good conduct time might be applied to [the defendant]."); *Jones v. State*, No. 11-10-00373-CR, 2012 WL 3537809, at *2 (Tex. App.—Eastland Aug. 16, 2012, pet. ref'd) (mem. op., not designated for publication) ("[T]he jury charge contained the standard curative language admonishing the jury not to consider the extent to which parole law might be applied to appellant, and there was no indication that the jury did not follow those instructions."). "It is presumed that the jury followed the instruction given by the trial judge to the jury, giving no consideration to parole." *Underwood v. State*, 927 S.W.2d 661, 663 (Tex. App.—Texarkana 1996, no pet.). Nothing in the record indicates otherwise. *See id.* Accordingly, we conclude that this factor mitigates against finding egregious harm. *See id.*; *see also Shavers v. State*, 985 S.W.2d 284, 292 (Tex. App.—Beaumont 1999, pet. ref'd) (presuming that "the jury followed the trial judge's curative instructions regarding the manner in which the parole law may be applied to an accused"); *Flowers v. State*, 890 S.W.2d 906, 918 (Tex. App.—El Paso 1994, no pet.) (noting that

"Texas courts have regarded similar instructions as curative and have viewed such instructions as a mitigating factor when determining whether the giving of parole law instructions harmed an appellant").

Next, during its closing argument, the State opined that given appellant's history of failing to abide by conditions of probation, he would likewise be unable to "make it" on parole. The State did not comment on when appellant would be eligible for parole. The State neither mentioned that appellant would be eligible for parole when he served one-fourth of his sentence or that appellant's parole depended on any set amount of time. Appellant did not address parole in his closing argument. Therefore, this factor weighs neither in favor of nor against finding egregious harm.

As to count two, one-fourth of the sentence imposed (seventy years) is more than fifteen years. However, "[p]arole instructions were designed to increase jury sentences." *Roberts v. State*, 849 S.W.2d 407, 410 (Tex. App.—Fort Worth 1993, pet. ref'd) (citing *Grigsby v. State*, 833 S.W.2d 573, 576 (Tex. App.—Dallas 1992, pet. ref'd)). "Texas courts agree that the State, not appellant, benefits from the parole law instructions." *Grigsby*, 833 S.W.2d at 576 (citing *Arnold v. State*, 786 S.W.2d 295, 298 (Tex. Crim. App. 1990)).

Here, the alleged error would have redounded to appellant's advantage because the jury was not informed that he would be eligible for parole after fifteen years, regardless of the punishment it assessed. Therefore, because the State, not the appellant, benefits from the instructions, it is hard to see how not giving a charge meant to increase the length of a sentence harms appellant. *See id.*; *Roberts*, 849 S.W.2d at 410.

18

Considering the record as a whole, the entire jury charge, the state of the evidence against appellant, the arguments of counsel, and the fact that the alleged error benefitted appellant, we conclude that appellant was not egregiously harmed by the omission of the words "or 15 years, whichever is less" from the parole law jury instruction. We overrule appellant's third issue.

## V. CONCLUSION

We affirm the trial court's judgment.

JAIME TIJERINA
Justice

Do not publish.
TEX. R. APP. P. 47.2(b).

Delivered and filed on the
1st day of February, 2024.